KATHERINE PAVLISCAK *v.* BRIDGEPORT HOSPITAL
(AC 16258)

Schaller, Hennessy and Daly, Js.

Argued December 16, 1997—officially released May 5, 1998

*Michael N. LaVelle*, for the appellant-appellee (defendant).

*Thomas E. Mangines*, with whom were *Frank Burke, Jane Ford Shaw* and, on the brief, *Brian A. Mangines*, for the appellee-appellant (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Bridgeport Hospital, appeals from the judgment, rendered after a jury trial, in favor of the plaintiff, Katherine Pavliscak, on her

claims related to the termination of her employment. The plaintiff cross appeals concerning the propriety of the trial court's order of remittitur with respect to certain components of the damages that the jury awarded the plaintiff. In its appeal, the defendant claims that the trial court improperly failed to set aside the verdict (1) on the first count of the plaintiff's complaint, which alleged promissory estoppel, (2) on the sixth count of the plaintiff's complaint, which alleged negligent infliction of emotional distress, and (3) with respect to the jury's separate award of damages to the plaintiff for back vacation pay when those damages were already contained in the parties' stipulation of lost wages. In her cross appeal, the plaintiff claims that the trial court improperly ordered a remittitur of the damages awarded for front pay and pension benefits after the jury properly awarded such damages. We reverse the judgment of the trial court as to the appeal.

The following facts are relevant to this appeal. The plaintiff commenced employment for the defendant on July 13, 1981, as a licensed practical nurse. At the time she commenced her employment, the plaintiff received a copy of "A Handbook for Employees of Bridgeport Hospital," which contained the defendant's employment policies and procedures. The plaintiff acknowledged in writing that she had received a copy of the handbook. During the course of her employment at the hospital, the plaintiff received revised versions of the handbook, which served to update the defendant's employment policies and procedures.

The plaintiff worked for the defendant in a variety of nursing positions for the first five years of her employment. In 1986, the plaintiff transferred to the hospital's labor and delivery operating room as a delivery room scrub nurse. She worked in that position until the time of her termination from employment on June 5, 1991. Throughout her term of employment, the plaintiff

received favorable performance evaluations, merit salary increases and salary bonuses.

In November, 1990, an incident involving the plaintiff occurred during a cesarean section operation. A lap pad, which is a rectangular piece of gauze used to absorb blood during an operation, was inadvertently left inside the patient after the operation. This was caused by an erroneous accounting of all lap pads utilized during the operation, which accounting was the combined responsibility of the scrub nurse and the circulating nurse in the operating room. The patient ultimately had to undergo a second operation in order to remove the lap pad. Both the plaintiff and the circulating nurse on duty that day were given written warnings by the hospital regarding this breach of operating room procedure.

Another incident involving the plaintiff occurred in May, 1991. Near the end of a cesarean section operation in the labor and delivery operating room, the plaintiff left the sterile environment of the operation to commence preparation for another operation scheduled to occur shortly thereafter. The plaintiff claimed that this was part of the normal protocol for a scrub nurse near the end of an operation. According to the plaintiff, the physicians would finish the operation and there would be little, if any, need for a scrub nurse to remain in the operating room. Therefore, in those instances when another operation was scheduled shortly thereafter, the scrub nurse would leave the ongoing operation in order to prepare the instruments and the sterile environment for the next operation. On May 10, 1991, however, the plaintiff's nursing supervisors directed her to remain in the operating room of the ongoing operation. The plaintiff nonetheless went to the operating room across the hall to prepare the instruments and sterile environment for the next operation scheduled for that day. The plaintiff was again told to return to the ongoing

operation. When she did return to the ongoing operation, the physicians had completed the work.

The plaintiff received a written warning on May 13, 1991, for breach of accepted operating room standards based on her actions during this incident. The plaintiff claimed that she received this warning based on a personality conflict with her supervisor at the time. She went on vacation from May 27 through June 4, 1991. When the plaintiff returned to work on June 5, 1991, she was notified by her supervisor that her employment was being terminated, effective immediately. The plaintiff was asked to gather her personal items from her locker and to leave the hospital premises.

In the plaintiff's revised complaint dated August 5, 1993, she sought damages from the defendant arising out of her termination of employment under the following six theories: (1) promissory estoppel, (2) breach of an express contract, (3) breach of the covenant of good faith and fair dealing, (4) breach of an implied contract, (5) negligent misrepresentation and (6) negligent infliction of emotional distress. Prior to trial, the plaintiff withdrew her third claim, good faith and fair dealing, and her fifth claim, negligent misrepresentation. In addition, the parties stipulated to the amount of damages suffered by the plaintiff.

On February 29, 1996, after a five day trial, the jury returned a verdict for the plaintiff on counts one, promissory estoppel, and six, negligent infliction of emotional distress, of her complaint. The jury awarded the plaintiff $55,774 in damages, plus an entitlement to pension benefits for eleven years of hypothetical posttermination employment service. The damages total was comprised of the following components: $19,630 in back pay, $6144 in front pay for three years, and $30,000 for emotional distress. The back pay figure included $9030 for vacation pay.

On March 4, 1996, the defendant filed a motion to set aside the verdict, a motion for judgment notwithstanding the verdict and a motion for remittitur. On March 13, 1996, the plaintiff filed an opposition to the defendant's motions. On July 25, 1996, the trial court filed its memorandum of decision on the defendant's motions.

The trial court granted the motion for remittitur for the front pay award of $6144 and for the pension benefit award for eleven years because the jury based liability on the theory of promissory estoppel, and such a finding justified only reliance damages. According to the trial court, the jury's award of front pay and pension benefits represented expectation or "benefit of the bargain" damages and were therefore inappropriate under a promissory estoppel theory of liability. The trial court ordered the verdict set aside unless, within twenty days, the plaintiff filed a remittitur as to $6144 and the pension award. The trial court denied the defendant's motion for judgment notwithstanding the verdict.

On August 9, 1996, the defendant filed an appeal from the trial court's judgment claiming that it improperly failed to set aside the verdict with respect to (1) the promissory estoppel count, (2) the negligent infliction of emotional distress count, and (3) the award of damages for vacation pay in the amount of $9030 because the parties had stipulated to the total lost wages during the back pay period. On August 14, 1996, the plaintiff filed a cross appeal claiming that the trial court improperly ordered a remittitur for damages that the jury awarded to the plaintiff.

On March 7, 1997, four days after the defendant's brief was filed in this appeal, the trial court issued a postcard notice to the parties, stating that the defendant's March 4, 1996 motion to set aside the verdict

and motion for judgment notwithstanding the verdict were granted.[1]

## I

As a preliminary matter, we must clarify the procedural context of this case. As stated previously, we asked the parties to address the procedural issues in the case by way of supplemental briefs.[2] After a thorough review of the parties' arguments and the applicable law, we conclude that it was improper for the trial court to take any action on the remittitur order once this appeal was filed by the defendant.

The automatic stay provision of Practice Book § 4046, now Practice Book (1998 Rev.) § 61-11, provides the basic guideline for the trial court once an appeal has been filed in the case: "In all actions, except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; *if an appeal is filed, such proceedings shall be stayed*

---

[1] After oral argument in this appeal, we asked the parties to file supplemental, simultaneous briefs addressing the following questions:

"(1) Did the trial court's order, rendered after the appeal was filed, granting the defendant's motions to set aside the verdict and for judgment notwithstanding the verdict due to the plaintiff's failure to file a remittitur as ordered by the court, violate the automatic stay provision of Practice Book § 4046 [now Practice Book (1998 Rev.) § 61-11]?

"(2) Did the trial court have authority to grant the defendant's motion for judgment notwithstanding the verdict following the plaintiff's failure to file a remittitur as ordered by the trial court or was the court limited to setting aside the verdict and ordering a new trial under General Statutes § 52-216 [a]?

"(3) May the judgment of the trial court be separated into two parts, the remittitur and the twenty day time limit? See *Cronin* v. *Gager-Crawford Co.*, 128 Conn. 401, 404, 23 A.2d 149 (1941).

"If so, does an appeal from the remittitur stay the remaining portion of the judgment, specifically the judgment notwithstanding the verdict twenty days after the remittitur was ordered?

"If not, was the appeal prematurely taken?"

[2] See footnote 1.

*until the final determination of the cause. . . ."*
(Emphasis added.) Section 4046 also provides a mecha-
nism whereby the trial court may terminate the auto-
matic stay upon motion and hearing "if the judge who
tried the case is of the opinion that . . . the appeal is
taken only for delay or that the due administration of
justice so requires . . . ."

In this case, there was no termination of the auto-
matic stay, nor was one sought by either party. No
hearing was ever held by the trial court to terminate
the automatic stay. Our review of the law reveals no
specific authority that allows a trial court to enforce a
remittitur order by setting aside the verdict after an
appeal has been filed. In this case, the plaintiff had
already filed her cross appeal challenging the correct-
ness of the remittitur order when the trial court set aside
the verdict and rendered judgment notwithstanding the
verdict. The trial court executed its order while the
underlying basis of that order was being challenged on
appeal. It is not appropriate to allow such action to
undercut a party's position.

"It is fundamental to the judicial process that a party's
right to judicial review shall not be obliterated or under-
mined by the unauthorized exercise of jurisdiction by
the court whose doings are, or may be, subject to
review. . . . A party accorded the right of appellate
review is entitled to the full and unhampered exercise
of that right in accordance with the applicable rules of
practice or statutes. This the defendant was deprived
of, and so, he was deprived of due process of law."
*Hartford National Bank & Trust Co.* v. *Tucker,* 181
Conn. 296, 298, 435 A.2d 350, cert. denied, 449 U.S. 956,
101 S. Ct. 363, 66 L. Ed. 2d 221 (1980).

In this case, the automatic stay served to protect the
defendant as well as the plaintiff. The automatic stay
prohibited the plaintiff from proceeding to execute and

levy on the judgment obtained against the defendant. "The stay does not vacate the judgment obtained by the successful litigant. It merely denies that party the immediate fruits of his or her victory . . . in order to protect the full and unhampered exercise of the right to appellate review." (Citation omitted; internal quotation marks omitted.) *Preisner* v. *Aetna Casualty & Surety Co.*, 203 Conn. 407, 414, 525 A.2d 83 (1987).

The defendant claims that the trial court's action was not a "proceeding to enforce or carry out the judgment" to which § 4046 applies, and, as a result, the automatic stay does not apply in this case. Instead, the defendant claims that the trial court's action in setting aside the verdict and rendering judgment notwithstanding the verdict merely served to effectuate the trial court's original order, thereby preserving the status quo pursuant to *Hill* v. *Hill*, 35 Conn. App. 160, 173, 644 A.2d 951, cert. denied, 231 Conn. 914, 648 A.2d 153 (1994). We are not persuaded.

In *Hill*, we held that the trial court's postjudgment order for the defendant to return an automobile to the plaintiff did not violate the automatic stay because the defendant had obtained possession of the vehicle contrary to the terms of the dissolution decree. We interpreted the trial court's action in that case as a preservation of the status quo between the parties as previously adjudicated by the trial court rather than a violation of the automatic stay. We cannot interpret *Hill* to allow the trial court in this case to set aside the verdict and render judgment notwithstanding the verdict. The trial court's action in *Hill* served to uphold a relatively insignificant aspect of the overall case, returning one piece of personal property to one of the parties pursuant to the dissolution decree's division of property.

The trial court's action in this case served to change completely the complexion of the case while the underlying basis of that action was being challenged on

appeal. Prior to the trial court's action, the case stood in the posture of a verdict for the plaintiff with an outstanding remittitur order still pending. After the trial court's action, the plaintiff's verdict was set aside and a judgment for the defendant notwithstanding the verdict was rendered. This is substantially dissimilar to the situation in *Hill*. As a result, we believe that *Hill* is inapposite to the present case.

Accordingly, we hold that the trial court's order setting aside the verdict and rendering judgment notwithstanding the verdict violated the automatic stay provision of § 4046. Therefore, the order is void and the case stands in the procedural posture that existed at the time the defendant's appeal and the plaintiff's cross appeal were filed.[3] Specifically, there is a jury verdict for the plaintiff along with an outstanding remittitur order. We now address the substantive merits of the parties' claims raised on appeal.

II

The defendant first claims that the trial court improperly failed to set aside the jury's verdict with respect to the first count of the plaintiff's complaint, which alleged the existence of a contractual relationship based on promissory estoppel. Specifically, the defendant claims that the doctrine of promissory estoppel does not apply to the facts of this case because the plaintiff was an employee at will, and the hospital did not undertake any actual contractual commitment that she could

[3] Because we hold that any action by the trial court was improper based on the § 4046 automatic stay, we do not address the specific nature of the trial court's action and whether a judgment notwithstanding the verdict was proper under the circumstances. See General Statutes § 52-216a, which provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. . . ."

be discharged only for cause. We agree with the defendant.

When evaluating whether the trial court should have set aside the verdict, our scope of review is limited to ascertaining whether the trial court abused its discretion in failing to set aside the verdict. *Young* v. *Data Switch Corp.*, 231 Conn. 95, 100, 646 A.2d 852 (1994). "We have often held that [t]he decision to set aside the verdict entails the exercise of a broad legal discretion that, in the absence of clear abuse, we shall not disturb. . . . *American National Fire Ins. Co.* v. *Schuss*, 221 Conn. 768, [774,] 607 A.2d 418 (1992); *State* v. *Hammond*, 221 Conn. 264, 270, 604 A.2d 793 (1992). In our review of the exercise of this discretion, we accord great weight to the trial court's decision; *Labatt* v. *Grunewald*, 182 Conn. 236, 240–41, 438 A.2d 85 (1980); so long as the trial court's exercise of its discretion does not infringe on the constitutional rights of the litigants to have issues of fact determined by a jury. *Seals* v. *Hickey*, 186 Conn. 337, 350, 441 A.2d 604 (1982). This right is an obviously immovable limitation on the legal discretion of the court to set aside a verdict . . . . *Camp* v. *Booth*, 160 Conn. 10, 13, 273 A.2d 714 (1970). *Ginsberg* v. *Fusaro*, 225 Conn. 420, 425, 623 A.2d 1014 (1993); *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 722–29, 627 A.2d 374 (1993)." (Citations omitted; internal quotation marks omitted.) *Young* v. *Data Switch Corp.*, supra, 100–101.

"Our review of the trial court's refusal to [grant the motions] requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . *Mather* v. *Griffin Hospital*, 207 Conn. 125,

130, 540 A.2d 666 (1988)." (Citations omitted; internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 277, 698 A.2d 838 (1997).

We begin with a review of the jury's verdict. The jury, in its response to the interrogatories that were submitted to it, found for the plaintiff on the promissory estoppel claim, and for the defendant on both the express and implied contract claims.[4] The jury also

[4] The jury responded to the interrogatories in the following manner:

"First Claim

"1. Did the plaintiff prove that the hospital, by its conduct, practices and oral and written statements, made a clear and definite promise to the plaintiff that she would have employment as long as she adequately or satisfactorily performed her job?

Yes _X_      No ___

"If yes, answer next question; if no, go to question 5.

"2. Did the plaintiff prove that the hospital had reason to expect the plaintiff would rely on this promise?

Yes _X_      No ___

"If yes, answer next question; if no, go to question 5.

"3. Did the plaintiff prove that she relied on the promise?

Yes _X_      No ___

"If yes, answer next question; if no, go to question 5.

"4. Did the plaintiff prove that when the hospital supervisors discharged her, they did not have a factual basis for a good faith belief that the plaintiff was performing her duties in an unsatisfactory manner?

Yes _X_      No ___

"Second Claim

"5. Did the plaintiff prove that the plaintiff and defendant agreed that the hospital would only discharge the plaintiff after proceeding through a progressive discipline policy, unless a ground existed for discharging her without proceeding through all the steps?

Yes ___      No _X_

"If yes, answer next question; if no, go to question 8.

\* \* \*

"Fourth Claim

"8. Did the plaintiff prove that the hospital agreed with her, either by words or actions or conduct, to undertake some form of actual contractual commitment to her under which she could not be terminated without just cause so long as she performed her job properly?

Yes ___      No _X_

"If yes, answer next question; if no, go to question [10].

\* \* \*

found for the plaintiff on the emotional distress claim. When read in terms of the language employed in the interrogatories, we conclude that the jury made inconsistent findings with respect to the promissory estoppel claim and the express and implied contract claims. The jury found in connection with the express and implied contract claims that the defendant did not undertake any actual contractual commitment that the plaintiff could be discharged only for just cause, or only after proceeding through all of the steps outlined in its progressive discipline policy. The jury, however, also found in connection with the promissory estoppel claim that the defendant made a clear and definite promise that she would be employed as long as she adequately and satisfactorily performed her job. These findings are inconsistent, particularly when viewed in light of the law of promissory estoppel.[5]

---

"Sixth Claim

"10. Did the plaintiff prove one of the following claims: first claim, second claim or fourth claim?

Yes _X_     No ___

"If yes, answer question 11.

"If no, do not answer the next two questions.

"11. Did the plaintiff prove that the hospital should have realized that its conduct involved an unreasonable risk of causing emotional distress, and that that distress, if it resulted, might result in illness or bodily harm?

Yes _X_     No ___

"If yes, answer question 12.

"If no, do not answer the next question.

"12. Did the plaintiff prove that she suffered emotional distress and that the hospital's conduct was a proximate cause of the emotional distress for which she seeks compensation?

Yes _X_     No ___"

[5] The doctrine of promissory estoppel is derived from the Restatement of Contracts § 90, which provides in relevant part: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." 1 Restatement (Second), Contracts § 90, p. 242 (1981).

Promissory estoppel provides an alternative that allows enforcement of a promise even without the usual indicia of conventional bargained for

"A contract implied in fact, like an express contract, depends on actual agreement." (Internal quotation marks omitted.) *Coelho* v. *Posi-Seal International, Inc.*, 208 Conn. 106, 111, 544 A.2d 170 (1988). An implied employment contract may be enforceable under the doctrine of promissory estoppel in order to avoid injustice to an employee who has detrimentally relied on "a clear and definite promise which a promisor could reasonably have expected to induce reliance" by the promisee. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 213, 520 A.2d 217 (1987). To prevail on such a claim, the employee must prove by a fair preponderance of the evidence that the employer agreed, "either by words or action or conduct, to undertake [some] form of actual contract commitment" to the employee that she will not be discharged except for just cause. (Internal quotation marks omitted.) *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.,* 234 Conn. 1, 15, 662 A.2d 89 (1995); see also *Coelho* v. *Posi-Seal International, Inc.*, supra, 112; *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* supra, 213.

The jury in this case specifically found that the plaintiff failed to prove that the defendant agreed to undertake some form of actual contractual commitment that she would not be terminated without just cause as long as she performed her job properly.[6] The jury also found that the plaintiff failed to prove that the defendant

consideration. See S. Henderson, "Promissory Estoppel and Traditional Contract Doctrine," 78 Yale L.J. 343, 345–46 (1969). The doctrine serves as a consideration substitute to allow enforcement of contracts whereby one party has detrimentally relied on an express or implied promise even though traditional bargained for legal detriment is not present. See E. Yorio & S. Thel, "The Promissory Basis of Section 90," 101 Yale L.J. 111, 111–12 (1991). Promissory estoppel, therefore, is not a separate cause of action available to plaintiffs, but rather serves to allow enforcement of an otherwise validly formed contractual commitment that lacks traditional consideration.

[6] See jury interrogatory no. 8 in footnote 3.

agreed that it would discharge the plaintiff only after proceeding through a progressive discipline policy, unless a ground existed for discharging her without proceeding through all of the steps.[7] Our interpretation of these jury findings indicates that the plaintiff failed to prove that the defendant made any actual contractual commitment that the plaintiff would be terminated only for just cause. Therefore, the plaintiff was an employee at will and could be terminated at any time with or without cause. See *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474–75, 427 A.2d 385 (1980).

This characterization of the nature of the employment relationship is supported by the defendant's personnel manual,[8] which was introduced into evidence. Furthermore, the jury findings indicate that the parties did not have an actual contractual commitment to the contrary. In addition, the trial court confirmed this conclusion in its decision on the defendant's motion to set aside verdict, motion for judgment notwithstanding the verdict and motion for remittitur, when it stated: "The evidence does not support a conclusion [that] there was an employment contract for a definite term. The only evidence as to the term of employment is what is set forth in the employee handbook. The book shows [that] the plaintiff was employed for an indefinite term. *She was an at will employee.*" (Emphasis added.)

---

[7] See jury interrogatory no. 5 in footnote 4.

[8] The defendant's personnel manual, "A Handbook for Employees of Bridgeport Hospital," contains the following language on page five: "In consideration of their employment, employees agree to conform to the rules and regulations of Bridgeport Hospital. Subject to the notice provisions contained in this booklet, employment and compensation can be terminated, with or without cause, at any time, at the option of either the Hospital or the employee. The Hospital retains all common management rights, including, but not limited to, the right to hire and fire, to make rules and enforce discipline, to lay off for lack of work, and to determine hours of work, job duties and operations. No supervisor or department head, other than the president or the vice president for Human Resources, has any authority to enter into any agreement for employment for any specified period of time or to make any agreement contrary to the foregoing."

The jury concluded, however, that the plaintiff did prove her claim of an implied contract based on promissory estoppel. The trial court attempted to explain this finding in its decision on the defendant's motion to set aside verdict, motion for judgment notwithstanding the verdict and motion for remittitur. The trial court stated: "[T]he jury found that the defendant promised the plaintiff 'that she would have employment as long as she adequately or satisfactorily performed her job.' The plaintiff failed to prove that the parties agreed that a progressive discipline policy would be followed. The plaintiff also failed to prove an express contractual commitment that she could be terminated only for just cause. A reasonable reading of these responses in light of the evidence is that the jury concluded that the plaintiff's employment was terminated in violation of the discharge provisions that appear in the handbook. While the parties did not have an express contractual agreement that these provisions would be followed, the defendant by its words or conduct lead the plaintiff to believe the discharge policy would be followed."

We do not believe that this interpretation is reasonable given that the law of implied contracts based on promissory estoppel requires an actual agreement between the parties, whereby the employer must agree to undertake an actual contractual commitment. The finding as to the fourth claim that the defendant did not agree to undertake some form of actual contractual commitment clearly conflicts with the finding as to the first claim that the defendant did make a clear and definite promise that the plaintiff would have employment as long as she adequately or satisfactorily performed her job. Our review of the law indicates that it is not possible to make "a clear and definite promise which a promisor could reasonably have expected to induce reliance" by the promisee; *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, supra,

202 Conn. 213; while at the same time failing "either by words or action or conduct, to undertake [some] form of actual contract commitment." (Internal quotation marks omitted.) *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, supra, 234 Conn. 15. We conclude, therefore, that the jury's findings with respect to the fourth claim and its findings with respect to the first claim are inconsistent and not in accord with the law of promissory estoppel. Accordingly, the trial court abused its discretion in failing to set aside the verdict.

Our review of the record, file and transcripts also supports our conclusion that the trial court should have set aside the verdict. There is no support in the transcript for the proposition that the defendant ever made a clear and definite promise to the plaintiff that she would be terminated only for just cause. The source of the plaintiff's belief that she could be discharged only for cause did not arise from statements made to her by hospital personnel, but rather from her own perceptions based on the hospital's stable reputation in the community, the company benefit plan, the pension plan, the wage increases and the periodic performance reviews. These facts do not form a legally sufficient basis to sustain a claim of promissory estoppel.

"A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties. . . . The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind [the defendant] without some evidence that it intended to be bound to such a contract." (Citation omitted; internal quotation marks omitted.) *Reynolds* v. *Chrysler First Commercial Corp.*, 40 Conn. App. 725, 730, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996). Therefore, there was insufficient evidence presented to support the jury's verdict on the promissory estoppel claim. As a result, we conclude

that the trial court should have directed a verdict in favor of the defendant.

## III

The defendant next claims that the trial court improperly failed to set aside the verdict as to the sixth count of the plaintiff's complaint alleging negligent infliction of emotional distress. Specifically, the defendant claims that the mere termination from employment, even if wrongful, does not justify a finding of negligent infliction of emotional distress absent unreasonable conduct by the defendant during the termination process. We agree.

In order to prevail on this claim, the plaintiff must prove that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 683, 513 A.2d 66 (1986); *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978); *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 307, 93 A.2d 292 (1952); annot., 1 A.L.R.4th 209 (1980); 2 Restatement (Second), Torts § 313, p. 113 (1965).

Our Supreme Court recently addressed the issue of the proper standard for negligent infliction of emotional distress in the employment setting. "[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citation omitted; internal quota-

tion marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 88–89, 700 A.2d 655 (1997).

We believe that, as a matter of law, there is no support in the record for the jury's finding of negligent infliction of emotional distress. There was no evidence presented regarding any unreasonable conduct by the defendant during the termination process. The evidence showed only that the plaintiff was terminated from employment without advance warning. Since we have concluded that the plaintiff was an employee at will and, therefore, could be fired at any time, there is no support for a finding that the defendant acted unreasonably during the termination process.

There was no evidence that the defendant humiliated the plaintiff publicly. She was told in a private meeting with her supervisors that she was being terminated effective immediately, and that she must take her personal items and leave the hospital premises. While there was undoubtedly some indignity involved with being involuntarily terminated, we cannot say that this rises to the level of unreasonable conduct that would justify liability based on negligent infliction of emotional distress. Therefore, we hold that the trial court was required to exercise its discretion to set aside the verdict on this count. In fact, because we conclude that there was insufficient evidence in the record to support a finding of negligent infliction of emotional distress as a matter of law, the trial court should have directed a verdict in favor of the defendant.

### IV

On the basis of our determination of the foregoing issues, it is unnecessary for us to address the defendant's claim regarding the jury's improper award of back vacation pay. Since we are ordering a directed verdict in favor of the defendant on the liability issues, there is no need to reach the issue of the proper measure of damages.

## V

Because we believe the trial court improperly failed to set aside the verdict with respect to counts one and six of the plaintiff's complaint, it is also unnecessary for us to decide the plaintiff's cross appeal regarding the propriety of the trial court's remittitur order. Since the trial court should have directed a verdict in favor of the defendant, the issue as to the proper measure of damages for the plaintiff is not relevant.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

