[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #101
The plaintiff, Katherine Pascal, has brought this action against the defendant, Alternative Services of Connecticut, seeking compensatory and punitive damages for injuries allegedly suffered by the plaintiff while seeking full-time employment with the defendant. According to the complaint, the plaintiff had CT Page 14188 previously worked for the defendant on a full-time basis and earned satisfactory job performance evaluations prior to voluntarily changing her employment to a part-time basis. The plaintiff further alleges that she subsequently applied for an available full-time position with the defendant. Though her application was timely and she met the requirement for the opening, she was never given an interview and the position went to a "less-qualified male with less experience who had been fired from a similar job in the health care field." The plaintiff further claims that it was the defendant's policy that current employees would be considered for openings prior to outside applicants and that the defendant admitted it preferred a male for the position at issue.
The plaintiff's four-count complaint states causes of action based on 1) gender discrimination in violation of General Statutes § 46a-40(a)(1); 2) negligent infliction of emotional distress; 3) failure to provide a safe workplace in violation of General Statutes § 31-49; and 4) failure to provide a fit and competent vice-principal in violation of General Statutes § 31-49. The defendant has moved to strike the second, third and fourth counts on the ground that they are legally insufficient and fail to state a claim upon which relief can be granted.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Faulkner v. United Technologies Corp. , 240 Conn. 576,580, 693 A.2d 293 (1997).
I. Second Count — Negligent Infliction of Emotional Distress
In order to state a cause of action for negligent infliction of emotional distress, the plaintiff must allege that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm . . ." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technology Corp., 243 Conn. 66, 88,700 A.2d 655 (1997). The Parsons' court, however, limited the CT Page 14189 applicability of negligent infliction of emotional distress in the context of employment cases. Accordingly, "negligent infliction of emotional distress . . . arises only where it is based upon unreasonable conduct of the defendant in the termination process . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citations omitted; internal quotation marks omitted.) Id., 88-89.
Although the present case is a failure-to-hire case as opposed to a termination case, the court finds the language and reasoning in Parsons applicable. First, the court is mindful that the Supreme Court's holding, limiting negligent infliction of emotional distress to occasions where the employer's conduct is beyond the boundaries of socially tolerable conduct, is consistent with previous observations that "courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." Sheets v. Teddy's FrostedFoods, Inc., 179 Conn. 471, 477, 427 A.2d 385 (1980). The decision whether to hire a potential employee should be given latitude similar to that given an employer when terminating an at-will employee.
As with termination of employment, the decision not to hire an individual will inevitably leave the applicant with some ill feelings. See Pavliscak v. Bridgeport Hospital, 48 Conn. App. 580,598, 711 A.2d 747, cert. denied, 245 Conn. 911, ___ A.2d ___
(1998). Without allegations of "unreasonable conduct" on the part of the employer, however, the slighted employee cannot, as a matter of law, recover for these feelings of indignation.
"Unreasonable conduct" has been interpreted by the superior courts as conduct performed in an inconsiderate, humiliating or embarrassing manner. See Skierkowski v. Creative GraphicsServices, Inc., Supreme Court, judicial district of Hartford/New Britain at New Britain, Docket No. 463242 (May 5, 1995, Handy, J.). The plaintiff's allegations do not rise to such a level of unreasonable conduct, thus, the defendant's motion to strike the second count is granted.
II. Third and Fourth Counts
CT Page 14190
The third and fourth counts of the plaintiff's complaint are based on General Statutes § 31-49. The third count alleges that the defendant failed to provide a safe workplace in violation of the statute; the fourth count alleges that defendant failed to provide a fit and competent vice-principal in violation of the statute.
General Statutes § 31-49, entitled "Care required of a master for his servant's safety" provides, in pertinent part, that: "[i]t shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonable safe appliances and instrumentalities for his work and fit and competent persons as his colaborers and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person . . ."
Recently, the Connecticut Supreme Court had a chance to address causes of action under § 31-49. In Parsons v. UnitedTechnologies Corp. , supra, 243 Conn. 80, the Supreme Court held that, under § 31-49, a cause of action exists for the wrongful discharge of an employee "if the employee is discharged for refusing to work under conditions that pose a substantial risk of death, disease or serious physical harm and that are not contemplated within the scope of the employee's duties." Id. When interpreting § 31-49, the Supreme Court stated that "the only relevant inquiry is whether the employer directed the employee to work in a place or condition that poses an objectively substantial risk of death, disease or serious bodily injury to the employee." Id., 82. The employees subjective belief that her employer's directive would pose a threat to her health and safety is insufficient to state a cause of action under § 31-49.Id., 86.
In the present case, the plaintiff has not alleged sufficient facts indicating that she was employed in a place or under a condition that posed an objectively substantial risk of death, disease or serious bodily injury. This court rejects the defendant's reliance on the single Superior Court case which held that the language "substantial risk of death, disease or serious bodily injury" used in Parsons applies only to the factual situation of that case. See Brunelle v. Reuters Analytics Inc., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 566808 (January 29, 1998, Rittenband, J.) ("[b]ecause [the facts in Parsons] involved a war zone and the CT Page 14191 employee had refused to work there because of fear for his physical safety, the court commented solely upon the issue of physical safety. That does not mean that it intended to exclude the danger of emotional distress").
In Parsons, the Connecticut Supreme Court observed that the statute "reflect[s] a broad legislative concern for the physical
welfare and safety of Connecticut employees." (Emphasis added.)Parsons v. United Technologies Corp. , supra, 243 Conn. 80. This observation is consistent with the historic interpretation of § 31-49 as a statute to be used, especially prior to the introduction of the Workers' Compensation Act, when instituting actions seeking to establish employer liability for on-the-job related injuries. See Perille v. Raybestos-Manhattan-Europe,Inc., 196 Conn. 529, 536-543, 494 A.2d 555 (1985). The language of § 31-49, providing for a "safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his colaborers," suggests a work environment free from hazards that may cause physical harm. SeeMcElligott v. Randolph, 61 Conn. 157, 161-62, 22 A. 1094
(1891) (the Supreme Court's language in that case serves as the basis for the language of the statute). Thus, the approach inParsons of allowing an employee to recover under sec; 31-49 only upon an objective showing of "substantial risk of death, disease or serious bodily injury" is compatible with the historic purpose and usage of the statute.
Assuming, arguendo, that § 31-49 permits a cause of action for emotional distress resulting from an alleged "unsafe" workplace, the instant matter is distinguishable from the allegations in Brunelle. For one, Brunelle was a "wrongful termination" case and not a "failure-to-hire" case. Since any violation under § 31-49 must occur within the scope of the master-servant relationship; see Schmalz v. Aspetuck VillageCondominium Association, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 050998 (July 26, 1996, Skolnick, J); the very applicability of § 31-49 to a "failure-to-hire" factual scenario is at odds. While the plaintiff does allege a master-servant relationship as a result of per diem employment with the defendant, the alleged violations of § 31-49 do not occur in this configuration, but rather arise out of a failure-to-hire scenario, prior to the start of a master-servant relationship.
Furthermore, the court agrees with the defendant's argument CT Page 14192 that a vice-principal cannot be statutorily unfit and incompetent merely because the vice-principal does not hire an individual who may feel that he/she is more qualified and deserving than the person eventually hired. In Brunelle, the plaintiff alleged that the vice-principal engaged in derogatory and sarcastic comments to the plaintiff; the present complaint only alleges the vice-principal failed and refused to interview and hire the plaintiff. The plaintiff's complaint does not allege sufficient facts to state a cause of action pursuant to § 31-49.
Accordingly, the defendant's motion to strike the third and fourth counts of the complaint is granted.
Martin, J.