[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
 FACTS
On November 20, 2000, the plaintiff, Violet Esdaile, filed a four count revised complaint against the defendant, Hill Health Corporation. In the complaint, the plaintiff alleges that she was hired by the defendant as an administrator in March 1972, and continued to work for the defendant for twenty-four years until the defendant terminated her employment on April 26, 1999.
In count one of the complaint, the plaintiff alleges that the defendant wrongfully terminated her employment in violation of state and federal laws prohibiting discrimination on the basis of age and disability. She CT Page 15108 also claims that her supervisor harassed her for six years, and the company ignored this conduct. In count two, the plaintiff alleges that the defendant breached an implied contract of employment. In count three, the plaintiff alleges that the defendant breached the implied covenant of good faith and fair dealing, and in count four, she alleges that the defendant negligently inflicted emotional distress on her.
On December 26, 2000, the defendant filed a motion for an extension of time to file a motion to strike the revised complaint. On the same day, it filed a motion to strike all four counts. The defendant argues that; 1) the plaintiff failed to exhaust the statutory remedies available to her under state and federal law with regard to her allegations of age and disability discrimination; 2) the plaintiff fails to allege facts sufficient to establish a breach of an implied contract; 3) the plaintiff fails to allege a violation of an important public policy, which is an essential element of her claim for breach of the implied covenant of good faith; and 4) the plaintiff fails to allege that the defendant acted unreasonably during her termination, which is a required element of her claim for negligent infliction of emotional distress. On February 26, 2001, the plaintiff filed a memorandum of law in opposition to the defendant's motion to strike. The plaintiff asserts that she has adequately plead her claims.
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). In ruling on a motion to strike, the trial court examines the complaint "construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. MiddlesexMutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997). When deciding the motion, "the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Faulkner v. UnitedTechnologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997). "[G]rounds other than those specified should not be considered by the trial court in passing upon a motion to strike. . . ." (Internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, 259, 765 A.2d 505 (2001).
The plaintiff argues that the defendant's motion to strike was untimely filed, and should therefore be denied. Pursuant to Practice Book §10-8, a motion to strike must be filed within 15 days of the preceding pleading.[1] The plaintiff filed the revised complaint on November 20, 2000, and the defendant filed the motion to strike thirty days later, on CT Page 15109 December 26, 2000. The defendant did, however, file a motion for extension of time in which to file its motion to strike. In that motion, the defendant alleges that it first learned that the plaintiff filed a revised complaint on December 12, 2000, and first received a copy of it on December 13, 2000.[2]
General Statutes § 52-121 (a) provides: "Any pleading in any civil action may be filed after the expiration of the time fixed by statute or by any rule of court until the court has heard any motion for judgment by default or nonsuit for failure to plead which has been filed in writing with the clerk of the court in which the action is pending." It is well established that the court has discretion as to whether it will consider the merits of an untimely motion. "[A]lthough a motion to strike may appear untimely on its face, the court has discretion to permit a late pleading where the parties have both submitted arguments on the merits."Scap Motors v. Pevco Systems International, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 348461 (August 12, 2000, Melville, J.) (25 Conn. L. Rptr. 283); see also People's Bankv. Scarpetti, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 345123 (February 5, 1998, Skolnick, J.) (21 Conn. L. Rptr. 357). In this case, the plaintiff did not file for judgment by default or failure to plead, and both parties argue the merits of the motion to strike. Therefore, the court will exercise its discretion and grant the defendant's motion for extension of time and consider the merits of the motion to strike.
In count one of the revised complaint, the plaintiff alleges that the defendant wrongfully discharged her in violation of the public policy of Connecticut law under General Statutes § 46a-58, 46a-60 (a)(4); and of federal law under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination of Employment Act (ADEA) of 1967, and the Americans with Disabilities Act. The defendant moves to strike count one on the ground that the plaintiff's wrongful discharge claim is barred, as there are statutory remedies available to the plaintiff under state and federal law for age and disability discrimination.
A cause of action for wrongful discharge is only recognized where the employer has clearly contravened public policy. Sheets v. Teddy's FrostedFoods, Inc., 179 Conn. 471, 475, 427 A.2d 385 (1980). "The cases which have established a tort or contract remedy for employees discharged for reasons in violation of public policy have relied upon the fact that within the context of their case, the employee was otherwise withoutremedy and that permitting the discharge to go unaddressed would leave a valuable social policy to go unvindicated." (Emphasis in original; internal quotation marks omitted.) Burnham v. Karl Gelb, P.C., CT Page 15110252 Conn. 153, 159-60, 745 A.2d 178 (2000). Allegations of employment discrimination are "adequately enforceable through statutory remedies and [do] not warrant judicial recognition of an independent cause of action."Atkins v. Bridgeport Hydraulic Company, 5 Conn. App. 643, 648,501 A.2d 1223 (1985). The plaintiff alleges that she pursued statutory remedies through the Connecticut Commission on Human Rights and Opportunities (CHRO) as mandated by General Statute § 46a-82. The plaintiff claims that she filed and conducted an unsuccessful indigent pro se action in the CHRO. Thus the plaintiff's allegations indicate that a remedy was available to her under state law and that she was not "otherwise without a remedy" for her wrongful discharge claim. "The plaintiff had available administrative remedies that could have afforded her meaningful relief under the statute that governs her claim of discrimination. Her failure to exhaust her appellate review procedures after bringing her complaint to the CHRO forecloses her access to judicial relief. . . ." (Internal quotation marks omitted.) Atkins v.Bridgeport Hydraulic Company, supra, 5 Conn. App. 647. The court grants the defendant's motion to strike count one.
In count two, the plaintiff alleges that the defendant breached its implied contract with the plaintiff by not following its written policies and guidelines prohibiting discrimination, unequal and unfair treatment, and by not conforming to its own standards of due process and fairness. The defendant moves to strike count two on the ground that the plaintiff has not alleged sufficient facts to establish a claim for breach of implied contract. Moreover, the defendant argues that the plaintiff cannot establish that it undertook any form of contractual commitment to her.
The Supreme Court has recognized "that it is a general proposition that contracts of permanent employment, or for an indefinite term, are terminable at will." (Internal quotation marks omitted.) Burnham v. Karl Gelb, P.C., supra, 252 Conn. 158-59. "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. . . . [T]he default rule of employment at will can be modified by agreement of the parties. . . . [T]o prevail on the . . . count of his complaint [that] alleged the existence of an implied agreement between the parties, the plaintiff [has] the burden of proving . . . that [the employer] has agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause." (Citations omitted; internal quotation marks omitted.) Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., 234 Conn. 1, 14-15, 662 A.2d 89 (1995).
"It is firmly established that statements in an employer's personnel CT Page 15111 manual may . . . under appropriate circumstances . . . give rise to an express or implied contract between employer and employee." (Internal quotation marks omitted.) Gaudio v. Griffin Health Services Corp.,249 Conn. 523, 532, 733 A.2d 197 (1999). It is also established, however, that "[a] contractual promise cannot be created by plucking out phrases out of context; there must be a meeting of minds between the parties. . . . In order to support contractual liability, the defendants' representations must be sufficiently definite to manifest a present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff" (Citations omitted; internal quotation marks omitted.) Burnham v. Karl Gelb, P.C., 50 Conn. App. 385,389, affirmed on other wounds, 252 Conn. 153, 745 A.2d 178 (2000).
In this case, although the plaintiff refers to certain policies within the personnel manual that she claims created an implied contract between the parties, she does not allege the specific guidelines or policies that she is relying upon. Nor does the plaintiff allege that the defendant's policies limited its ability to terminate the plaintiff's employment at will.
Furthermore, the plaintiff fails to allege facts that show that the defendant undertook any form of contractual commitment to her. Recently, the Superior Court granted a motion to strike a claim for breach of an implied employment contract, and explained that "in order to take an employment relationship out of the default rule of employment at will, the plaintiff must allege facts that support her claim that the employer agreed, either by words or conduct, to undertake a contractual commitment to discharge the plaintiff only for good cause . . . the plaintiff's allegations are conclusory and insufficient to allege terms of the agreement essential to her claim." Sherman v. Sedgwick James ofConnecticut, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 326150 (February 10, 1997, J. Melville). For the foregoing reasons, the court grants the motion to strike count two.
In count three, the plaintiff alleges that she had an oral contract of employment with the defendant and that the defendant breached an implied covenant of good faith and fair dealing with respect to this contract by discharging her without good cause. The defendant moves to strike count three on the ground that the plaintiff fails to allege that the defendant violated an important public policy not redressable by statutory remedy, an element essential to her claim for breach of an implied covenant of good faith and fair dealing.
The Connecticut Supreme Court has expressly limited the circumstances in which an implied covenant of good faith can be applied to an employment at will relationship. Accordingly, the Court has stated, CT Page 15112 "[w]here employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right. Like other contract provisions, which are unenforceable when violative of public policy, the right to discharge at will is subject to the same restriction. We see no reason . . . to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety . . . derived from some important violation of public policy." (Internal quotation marks omitted.) Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 572, 479 A.2d 781 (1984).
In this case, the plaintiff fails to allege facts sufficient to show that her employment relationship with the defendant was other than at will. Moreover, she fails to allege a public policy violation. "In absence of a public policy violation, there is no breach of the implied covenant of good faith and fair dealing." Doherty v. Sullivan,29 Conn. App. 736, 743, 628 A.2d 56 (1992). For this reason, the court grants the motion to strike count three.
In count four, the plaintiff alleges that the defendant negligently inflicted emotional distress on her in the process of terminating her employment. The defendant moves to strike this count on the ground that the plaintiff has not alleged facts that show that the defendant acted unreasonably during the termination process.
The Connecticut Supreme Court has held that "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct during the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, in itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp., 243 Conn. 66, 88-89,700 A.2d 655 (1997). The Appellate Court recently discussed what constitutes `unreasonable conduct.' "There was no evidence that the manner of the plaintiff's termination from employment was different in any way from the usual termination of employment or that it was done in any way that would cause anything more than the normal upset that would result from any termination of employment." Chieffalo v. Norden Systems,Inc., 49 Conn. App. 474, 480-81, 714 A.2d 1261 (1998).
In this case, the plaintiff alleges that the defendant summarily discharged her, and allowed her only two hours to leave the premises despite her many years of loyal service and that its conduct did not conform to its own policies. Connecticut courts have determined that this CT Page 15113 type of conduct is insufficient to support a claim for negligent infliction of emotional distress. For example, in Pavliscak v. BridgeportHospital, 48 Conn. App. 580, 711 A.2d 747, cert. denied, 245 Conn. 911,715 A.2d 17 (1998), the Appellate Court explained that "the evidence showed only that the plaintiff was terminated from employment without advance warning. Since we have concluded that the plaintiff was an employee at will and, therefore, could be fired at any time, there is no support for a finding that the defendant acted unreasonably during the termination process. There was no evidence that the defendant humiliated the plaintiff publicly. She was told . . . that she was being terminated, effective immediately, and that she was must take her personal items and leave the hospital premises. While there was undoubtedly some indignity involved with being involuntarily terminated, we cannot say that this rises to the level of unreasonable conduct that would justify liability based on negligent infliction of emotional distress." Id., 598. For the foregoing reasons, the court grants the defendant's motion to strike count four.
In conclusion, the court strikes all four counts of the plaintiff's complaint.
By the Court
Kevin E. Booth Judge of the Superior Court