[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#127)
On March 23, 1998 the plaintiffs, Alan Rosenberg and his spouse, Lynne Rosenberg, filed a six-count revised complaint against the defendants.[1] The causes of action asserted in the complaint arise out of Alan Rosenberg's employment with the Meriden housing authority (authority) and the termination of this employment. The defendants are the authority, an agency established by the city of Meriden to operate housing development projects, Lucille C. Malavenda, a commissioner and chairperson of the board of commissioners of the authority, W. James Rice, executive director of the authority, and Hector Cardona, Carl Lohman, Urseline Boltin and Jennie T. Roccapriore, commissioners of the authority.
In the revised complaint (complaint), which is the operative pleading, Alan Rosenberg asserts causes of action for breach of contract, promissory estoppel, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation and discriminatory discharge for exercise of rights under the Workers' Compensation Act. Lynne Rosenberg asserts a cause of action for loss of consortium. The defendants filed their answer and special defenses on May 22, 1998.[2] On May 20, 1999, the defendants filed a motion for summary judgment on all counts of the complaint. In support of their motion, the defendants filed a memorandum of law, the affidavits of CT Page 14319 defendants Rice, Boutin (sued as Boltin), and Malavenda, uncertified excerpts from Alan Rosenberg's deposition (Deposition),[3] and a transcript of a tape recording of the executive session of the commissioners of the authority held on May 11, 1995 (Transcript).[4] The plaintiffs submitted an objection to the motion for summary judgment dated July 22, 1999, supported by a memorandum of law and an affidavit of Alan Rosenberg. The court heard the parties' oral argument on the motion for summary judgment on July 26, 1999.
In the complaint, the plaintiffs make the following allegations regarding Alan Rosenberg's employment with the Meriden housing authority. In November, 1992, Alan Rosenberg was hired as director of building and grounds. He began to work for the authority on January 4, 1993. Alan Rosenberg was told by the defendant Rice that as long as he did his job and carried out his duties and responsibilities, he would have a job with the authority for as long as he wanted. The plaintiffs allege that Alan Rosenberg always met and exceeded his obligations. They list numerous achievements that they claim he attained over the course of his employment. They also allege that the defendants acted "extreme[ly], intolerab[ly] and outrageously" toward him during his employment. They allege that on May 8, 1995, Alan Rosenberg suffered a work related injury while in the course of his employment and that he filed a report of injury and a claim for workers' compensation benefits on May 9, 1995. The plaintiffs allege that on May 11, 1995, the defendants terminated Alan Rosenberg's employment without good cause and without misconduct on his part for the stated reason of "inability to perform job properly." They also allege that the defendants made false and malicious allegations against him. The plaintiffs claim that, as a result of the defendants' conduct, Alan Rosenberg suffered lost income, benefits and job rights, is unable to attain a job with equal income and benefits, and suffered substantial and enduring emotional distress, anguish, embarrassment and humiliation. Finally, Lynne Rosenberg asserts a cause of action for loss of consortium pursuant to her husband's causes of action for breach of implied contract, promissory estoppel and intentional infliction of emotional distress.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view CT Page 14320 the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.)Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55,707 A.2d 15 (1998).
Breach of Contract (First Count)
Implied Contract of Employment (First Count)
In the first count of the complaint, the plaintiffs allege that Alan Rosenberg had an implied contract of employment with the Meriden housing authority pursuant to which he could be discharged only for cause and that the defendants breached this contract when they terminated his employment on May 11, 1995. This cause of action is based on their allegation that Rice told Alan Rosenberg "that as long as the Plaintiff did his job and carried out his duties and responsibilities, he would have a job with the Meriden Housing Authority for as long as he wanted." (Revised Complaint, First Count, ¶ 7.) In his deposition, Alan Rosenberg gave the following account of Rice's statement: "When I was hired by Mr. Rice, he indicated to me that I had a job there, continuous job there, basically forever. No one gets fired from the Housing Authority and if I completed my tasks that he gave me, that I would be there forever. . . . I had a job there as long as I wanted." (Deposition, p. 74.)
In their motion for summary judgment, the defendants do not dispute that Rice made this statement to Alan Rosenberg. They argue, rather, that Alan Rosenberg was employed for an indefinite term, and therefore was employed at will. They argue that he has not alleged sufficient conduct by the defendants to support a cause of action for breach of an express or implied contract. The plaintiffs respond that they have alleged sufficient facts to support a cause of action for breach of an implied contract and that, in any case, the issue of whether the parties entered into CT Page 14321 a contract and the terms thereof depends on the intention of the parties, and that the issue of intent presents a question of fact for the trier of fact.
"Contracts may be expressed or implied. These terms, however, do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties is shown. If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the surrounding circumstances, then the contract is an implied one. . . . Whether [a] contract is styled `express' or `implied' involves no difference in legal effect, but lies merely in the mode of manifesting assent. . . ." (Citations omitted, internal quotation marks omitted.) Boland v. Catalano, 202 Conn. 333, 336-37,521 A.2d 142 (1987). In this case, the plaintiffs do not allege that Alan Rosenberg and the defendants expressly agreed to any specific terms or conditions of his employment, or that he had an express contract of employment with the authority. Instead, they appear to limit their claim to one of breach of implied contract. (See Revised Complaint, ¶ 18.)
The Connecticut Supreme Court recognizes that "[a]ll employer-employee relationships not governed by express contracts involve some type of implied `contract' of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working. . . ." (Citations omitted; internal quotation marks omitted.) Gaudio v.Griffin Health Services Corp. , 249 Conn. 523, 532, 733 A.2d 197
(1999). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, [a]s a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will. . . ." (Citations omitted; internal quotation marks omitted.) Torosyan v. Boebringer Ingelheim Pharmaceuticals,Inc., 234 Conn. 1, 14, 662 A.2d 89 (1995). An employment at will relationship can, however, be "modified by agreement of the parties." Id., 15. To sustain a cause of action based on the alleged "existence of an implied agreement between the parties, the plaintiff [has] the burden of proving . . . that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause. . . ." CT Page 14322 (Citations omitted, internal quotation marks omitted.) Id. "A contract implied in fact, like an express contract, depends on actual agreement. . . ." (Citations omitted; internal quotation marks omitted.) Coelho v. Posi-Seal International, Inc.,208 Conn. 106, 111-12, 544 A.2d 170 (1988).
"To determine the contents of any particular implied contract of employment, the factual circumstances of the parties' relationship must be examined in light of legal rules governing unilateral contracts. . . . Initially, the trier of fact is required to find that the employer's oral representations . . . [were] an `offer' — i.e., that it was a promise to the employee that, if the employee worked for the company, his or her employment would thereafter be governed by those oral . . . statements. . . . If the oral representations . . . constitute an `offer,' the trier of fact then is required to find that the employee accepted that offer."[5] Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., supra, 234 Conn. 13-14. "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of minds between the parties. . . . In order to support contractual liability, the defendants' representations must be sufficiently definite to manifest a `present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff.'. ." Burnham v. Karl Gelb, P.C., 50 Conn. App. 385,389, 717 A.2d 811, cert. granted on other grounds, 247 Conn. 944,723 A.2d 320 (1998), quoting D'Ulisse-Cupo v. Board of Directorsof Notre Dame High School, 202 Conn. 206, 214-15, 520 A.2d 217
(1987). "Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." Torosyan v.Boehringer Ingelheim Pharmaceuticals, Inc., supra, 234 Conn. 15.
The Connecticut Supreme Court has held that oral representations similar to Rice's statements to Alan Rosenberg provided sufficient evidence for a jury to find that an implied contract existed. Gaudio v. Griffin Health Services Corp. , supra,249 Conn. 538. In Gaudio the court concluded that, inter alia, the plaintiffs testimony that he "`was promised that as long as [he] was doing [his] job and continued to do a good job, [he] would be there for as long as [he] wished'" provided sufficient evidence of an implied contract precluding the defendant from terminating the plaintiff without just cause. Id., 538. Similarly in Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra. CT Page 14323234 Conn. 1, the court upheld the trial court's finding of an implied contract that the plaintiff could only be terminated for cause based, inter alia, on statements the defendant's representative made to the plaintiff that "if the plaintiff did a good job, the defendant would take care of him." Id., 16; see also Coelho v. Posi-Seal International, Inc., supra,208 Conn. 111 ("`Don't worry about it. You're all set . . . Just do your job. . . . This is the team that will carry this company ahead.'"); Barry v. Posi-Seal International, Inc.,36 Conn. App. 1, 4, 647 A.2d 882, remanded for further consideration on other grounds, 235 Conn. 901, 664 A.2d 1124
(1995) ("`[I]f you do your job, you do your work, you're going to have a job here.'"); Anastasio v. Knights of Columbus, Superior Court, judicial district of New Haven at New Haven, Docket No. 396806 (May 21, 1998, Silbert, J.) ("`You will never have to find another job; but you must always be loyal to me and this building.'")
Here the oral statement upon which the plaintiffs rely for their cause of action for breach of contract is sufficient to raise a genuine issue of material fact as to the existence of an implied contract. Although the statement does not contain definitive contract language, "[i]n the absence of [such] language . . . the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact. . . ." (Citation omitted; internal quotation marks omitted.) Gaudio v.Griffin Health Services Corp. , supra, 249 Conn. 533. "Summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. . . ." (Citation omitted; internal quotation marks omitted.) Reynolds v. Chrysler FirstCommercial Corp. , 40 Conn. App. 725, 731, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996). Therefore, the defendants are not entitled to summary judgment on the plaintiffs' cause of action for breach of contract.
Promissory Estoppel (First Count)
In the first count of their complaint, the plaintiffs also allege that Rice's statement to Alan Rosenberg gives rise to a cause of action for promissory estoppel. In their motion for summary judgment, the defendants contend that they are entitled to summary judgment on this cause of action because Rice's statement is not sufficiently promissory or definite to support a cause of action for promissory estoppel and because the plaintiffs fail to allege that Alan Rosenberg relied on the CT Page 14324 statement. The plaintiffs do not include a detailed response to this argument in their objection to the defendants' motion, but at oral argument they stated that Alan Rosenberg's conduct in performing his job as outlined in the complaint is sufficient evidence that he acted in reliance on Rice's statement.
"Section 90 of the Restatement Second [of Contracts] states that under the doctrine of promissory estoppel `[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, supra,202 Conn. 213. The required elements of a cause of action for promissory estoppel are: (1) the promissor made a clear and definite promise; (2) the promisee reasonably relied on the promise; (3) the promise induced the action taken by the promisee; and (4) injuries can be avoided only by enforcement of the promise. Id., 213-15. The plaintiff must allege a promise — "the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance;" id., 213; and reliance — that "the other party, influenced thereby . . . actually change[d] his position or [did] some act to his injury which he otherwise would not have done. . . ." (Citations omitted; internal quotation marks omitted.) DeLuca v. C.W. Blakeslee Sons, Inc.,174 Conn. 535, 545, 391 A.2d 170 (1978); see Chotkowski v. State,240 Conn. 246, 268, 690 A.2d 368 (1997).
In this case, the plaintiffs do not raise a genuine issue of material fact as to the element of reliance.[6] In order to satisfy this element, the plaintiffs must show that the actions Alan Rosenberg took in reliance on the defendants' promise are "of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute. . . ." (Citations omitted; internal quotation marks omitted.) DeLuca v.C.W. Blakeslee Sons, Inc., supra, 174 Conn. 545. The plaintiffs fail to present evidence that Alan Rosenberg changed his position in a way which could be accounted for only by the existence of a contract under which he could only be terminated for cause. Although they allege that he met and exceeded his obligations as an employee, such conduct is not sufficient to satisfy the element of reliance. See Bombard v. Industry Riggers, Inc., Superior Court, judicial district of Waterbury, Docket No. 140181 (January 5, 1998, Pellegrino, J.) (plaintiff failed to allege any CT Page 14325 change in position in reliance on an alleged contract; instead plaintiff alleged he remained employed by defendants); Leniart v.CS Distributors, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 516354 (January 21, 1994, Corradino, J.) (plaintiff presented no evidence that she "forbore doing anything" as a result of defendant's promise);Corrado v. Leonard, Superior Court, judicial district of Danbury, Docket No. 307646 (March 26, 1992, Fuller, J.) (fact that plaintiff left another job to work for defendant does not, without more, state a promissory estoppel claim). Therefore, the defendants are entitled to summary judgment on the plaintiffs' cause of action for promissory estoppel.
Intentional Infliction of Emotional Distress (Second Count)
In the second count of the complaint the plaintiffs allege a cause of action for intentional infliction of emotional distress. Specifically they allege that the defendants acted "extreme[ly], intolerabl[ly] and outrageously" toward Alan Rosenberg and that this conduct, which occurred both during his employment and at the time of his termination, caused him to suffer "substantial and enduring emotional distress, anguish, embarrassment and humiliation." The defendants argue that they are entitled to summary judgment on this cause of action because the plaintiffs fail to allege conduct that is extreme and outrageous. The plaintiffs respond that the conduct of the defendants as alleged in their complaint was extreme and outrageous.
At oral argument and during Alan Rosenberg's deposition, the parties agreed that the conduct the plaintiffs are relying for this cause of action is the defendants' conduct at the executive session held on May 11, 1995, just prior to the termination of Alan Rosenberg's employment. Specifically, Alan Rosenberg avers that at the executive session, held to discuss his status, the defendants did not allow him to speak or to respond to the allegations made about his conduct, he was cut off and was not permitted to face other employees who had a problem with his conduct. (Deposition, pp. 39, 44-45, 59-61.) In addition, the plaintiffs cite to Alan Rosenberg's contention that, on another occasion, Rice told him that I he knew that Roccapriore did not like Alan Rosenberg and "indicated there would be a problem when she started for the Housing Authority as the chairperson." (Deposition, p. 60.)
In order to state a claim of intentional infliction of CT Page 14326 emotional distress, "[i]t must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . (Citations omitted; internal quotation marks omitted.) DeLaurentis v. New Haven, 220 Conn. 225, 266-67,597 A.2d 807 (1991). As to the second element, which is the element at issue here, the question of "[w]hether the defendant's conduct . . . [is] sufficient to satisfy . . . [this element] is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury. . . ." (Citations omitted.) Mellaly v. Eastman Kodak Co.,42 Conn. Sup. 17, 18, 597 A.2d 846 (1991); see also Richter v.Danbury Hospital, Superior Court, judicial district of Danbury, Docket No. 307869 (June 9, 1998, Moraghan, J.). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . ." (Citation omitted, internal quotation marks omitted.) DeLaurentis v. New Haven, supra, 220 Conn. 267. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to the average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!' . . ." (Citations omitted; internal quotation marks omitted.) Mellaly v. Eastman Kodak Co., supra, 42 Conn. Sup. 20.
"A review of recent Connecticut decisions on the issue of extreme and outrageous conduct within the context of a claim for intentional infliction of emotional distress reveals that there is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action. The court looks to the specific facts and circumstances of each case in making its decision." Martins v. Bridgeport Hospital, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 356084 (February 11, 1999, Melville, J.). However, "[a] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional acts wholly lacking in social utility." (Internal quotation marks omitted.) Whelan v. Whelan, 41 Conn. Sup. 519, CT Page 14327 522, 588 A.2d 251 (1991). "[T]he plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life. . . ." Id. As stated by this court, "[t]hose cases in the employment context that have granted motions to strike because the allegations do not sufficiently describe "extreme and outrageous' behavior are more often those that allege little more than that the plaintiff was terminated without just cause." Centi v. Lexington Health Care Center, Superior Court, judicial district of New Haven at New Haven, Docket No. 383535 (May 1, 1997, Licari, J.).
Similarly, in granting summary judgments in favor of defendants based on this element, in several cases the court found the defendant's conduct insufficiently egregious. SeeFinucane v. Dandio, Superior Court, judicial district of New Haven at New Haven, Docket No. 366182 (February 26, 1999, Levin,J.) (24 Conn. L. Rptr. 165, 165-66) (defendants temporarily suspended plaintiff a baseball coach, and had police officer tell plaintiffs wife that plaintiff would be arrested if he returned to ball field); Henderson v. Hoban, Superior Court, judicial district of New Haven at New Haven, Docket No. 391352 (July 10, 1998, Levin, J.) (defendant shouted at plaintiff threatened to strike her, verbally attacked her, threatened and abused her "inviting a physical altercation"); Richter v. Danbury Hospital, Superior Court, judicial district of Danbury, Docket No. 307869 (June 9, 1998, Moraghan, J.) (defendant showed dislike and antipathy toward plaintiff recommended reduction of his privileges and influenced others to terminate plaintiffs employment); Manley v. Blue Cross/Blue Shield of Connecticut, Superior Court, judicial district of New Haven at New Haven, Docket No. 322213 (September 10, 1996, Corradino, J.) (at termination meeting, defendant's agent was "nasty, unpleasant and did not allow her to explain," but plaintiff did not allege he used profanity or took action designed to humiliate her).
On the other hand, "[i]n those cases where the courts have held that there was a question of material fact as to whether behavior was sufficiently extreme or outrageous to give rise to an intentional tort, the circumstances have been particularly egregious." Finucane v. Dandio, supra, 24 Conn. L. Rptr. 166. See, e.g., Appleton v. Board of Education, 53 Conn. App. 252,265-66, 730 A.2d 88 (1999) (defendants subjected plaintiff to "humiliating series of incidents . . . in front of coworkers'" told her they were collecting information on her, had police escort her off the premises, required her to undergo psychiatric CT Page 14328 evaluation and made her take leave even though evaluation showed she could work); Cucuel v. Fayed, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 315420 (February 28, 1997, Levin, J.) (plaintiff's employers induced him to give up his career with police department, misrepresented intent to hire him for three years, terminated him without cause, and opposed his entitlement to unemployment benefits.); Brown v.Ellis, 40 Conn. Sup. 165, 165-68, 484 A.2d 944 (1984) (defendant demanded that plaintiff employee, known to have fear of heights, take photographs from high places). Courts also cite to the presence of allegations of egregious conduct in determining that a cause of action for intentional infliction of emotional distress survives a motion to strike. See Centi v. LexingtonHealth Care Center, supra, Superior Court, Docket No. 383535 (defendant's agent changed plaintiffs work assignments, set unrealistic goals, came to her home on Sunday to terminate her and gave her a pretextual reason for her termination); Taylor v.Phyllis Bodel Childcare Center, Superior Court, judicial district of New Haven at New Haven, Docket No. 377237 (July 10, 1996,Licari, J.) (defendants accused plaintiff of child abuse and professional misconduct without investigating such claims, portrayed her as incompetent and unprofessional in evaluations to justify her termination and prevent future employment).
Here, the transcript of the executive session provides evidence that Alan Rosenberg was permitted to respond to at least some of the allegations made by the defendants. (Transcript, pp. 1-5.) In addition, although the transcript does indicate that the defendants sometimes cut off Alan Rosenberg's responses and that they may have been rude and insulting, it does not indicate that their conduct was sufficiently egregious to support a cause of action for intentional infliction of emotional distress. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Mellaly v. Eastman Kodak Co., supra,42 Conn. Sup. 19. Indeed, the behavior the plaintiffs allege amounts to the type of "`insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" that are insufficient to sustain this cause of action. Hiers v. Cohen, 31 Conn. Sup. 305,308-09, 329 A.2d 609 (1973), quoting 1 Restatement (Second), Torts § 46, comment (d) (1965). Therefore, the defendants are entitled to summary judgment on the plaintiffs' cause of action for intentional infliction of emotional distress.
CT Page 14329Negligent Infliction of Emotional Distress (Third Count)
In count three of the complaint, the plaintiffs assert a cause of action for negligent infliction for emotional distress. They argue that the defendants breached their duty to act reasonably and exercise due care in carrying out their employment relationship with Alan Rosenberg. Again, at oral argument the parties agreed that the conduct upon which the plaintiffs rely for this cause of action is the defendants' conduct at the time of Alan Rosenberg's termination.[7] Specifically, the plaintiffs allege that at the executive session held to discuss Alan Rosenberg's status, the defendants did not allow him to speak or to respond to the allegations made about his conduct, he was cut off and was not permitted to face other employees who had a problem with his conduct. (Deposition, pp. 39, 44-45, 59-61.) In addition, they cite to Alan Rosenberg's contention that, on another occasion, Rice told him that he knew that Roccapriore did not like Alan Rosenberg and "indicated there would be a problem when she started for the Housing Authority as the chairperson." (Deposition, p. 60.) The defendants contend that they are entitled to summary judgement on this cause of action as a matter of law because the conduct the plaintiffs rely on is not sufficiently unreasonable. The plaintiffs respond that the defendants' conduct was sufficient to sustain this cause of action.
A plaintiff asserting a cause of action for negligent infliction of emotional distress "has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm . . . ." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp. , 243 Conn. 66, 88,700 A.2d 655 (1997). In cases involving termination of employment, "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction for emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior. . . ." (Citations omitted; internal quotation marks omitted.) Id., 88-89. The plaintiff must include "additional allegations [beyond termination of employment] which occurred during the termination CT Page 14330 process or at the time of discharge." Centi v. Lexington HealthCare Center, supra, Superior Court, Docket No. 383535.
A review of recent decisions on this cause of action indicates that courts will generally find that conduct similar to the conduct on which the plaintiffs rely is not sufficiently "unreasonable" to support this cause of action. For example, inPavliscak v. Bridgeport Hospital, 48 Conn. App. 580, 598,711 A.2d 747, cert. denied, 245 Conn. 911, 718 A.2d 17 (1998), the court found that the evidence "showed only that the plaintiff was terminated from employment without advance warning. . . . There was no evidence that the defendant humiliated the plaintiff publicly. She was told in a private meeting with her supervisors that she was being terminated effective immediately and that she must take her personal items and leave the . . . premises." Id., 598. The court concluded that, "[w]hile there was undoubtedly some indignity involved with being involuntarily terminated, we cannot say that this rises to the level of unreasonable conduct that would justify liability based on negligent infliction of emotional distress . . . [and] that there was insufficient evidence in the record to support a finding of negligent infliction of emotional distress as a matter of law. . . ." Id. In Chieffalov. Norden Systems, Inc., 49 Conn. App. 474, 714 A.2d 1261 (1998), the evidence indicated that the plaintiff's supervisor fired the plaintiff in front of another worker and had him escorted out of the office in front of approximately twenty other employees. See id., 476. The court agreed with the trial court's determination that the record contained "`no evidence to support a finding by the jury of unreasonableness in the manner that the plaintiff was terminated.'" Id., 480. In contrast, in cases in which courts found a plaintiff's allegations were found sufficient to sustain this cause of action, the plaintiffs alleged conduct by the defendants which went beyond what the court could consider as reasonable. For example in Centi v. Lexington Health Care Center, supra, Superior Court, Docket No. 383535, the court determined that the following allegations were adequate to support negligent infliction of emotional distress: the defendant told the plaintiff that he intended to set unreasonable goals that she would not be able to meet; told others, before informing her, that her performance was inadequate and that she would be fired; and delivered her termination notice to her home on a Sunday. The court reached the same conclusion in Nguyen v. NewberryIndustries, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 571319 (October 31, 1997, Hale, J.), based on allegations that the defendant told the CT Page 14331 plaintiff to go home "with no explanation," coerced the plaintiff to conceal the fact that an injury was work related and to not file a claim for workers compensation, fired him for incurring a work related injury and contemplating filing a claim for workers compensation, and misled him as to the content of termination documents and subsequently amended documents the plaintiff had signed without his knowledge or consent.
In this case, although the defendants' conduct at the executive session may have subjected Alan Rosenberg to indignity, the evidence indicates that the meeting was private, he was permitted to address at least some of the matters raised during the meeting, and the defendants did not subject him to public humiliation. Such conduct does not rise to the level of unreasonableness necessary to sustain this cause of action. Therefore, the defendants are entitled to summary judgment of the plaintiffs' cause of action for negligent infliction of emotional distress.
Defamation (Fourth Count)
In the fourth count of the complaint, the plaintiffs allege that the defendants made false and malicious allegations against Alan Rosenberg and, as a consequence, he was brought into contempt and ridicule and his reputation was damaged. At oral argument and in Alan Rosenberg's deposition, the plaintiffs stated that their cause of action for defamation is based on the following; (1) the defendants' statement on his termination pink slip; (2) Rice's statement to Alan Rosenberg repeating a statement Lucille Malavenda made to him; (3) the defendants' statements at the executive session about Alan Rosenberg's job performance; and (4) Malavenda's statements regarding Alan Rosenberg. The defendants claim that they are entitled to summary judgment on this cause of action because the statements upon which the plaintiffs rely are absolutely or conditionally privileged, constitute inadmissible hearsay, or are statements of opinion. The plaintiffs do not offer a specific response to the defendants' arguments but generally claim that they stated a cause of action for defamation.[8]
To prevail on a cause of action for defamation, the plaintiff must prove "that the defendants published false statements that harmed the [plaintiff], and that the defendants were not privileged to do so." (Internal quotation marks omitted.)Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra, CT Page 14332234 Conn. 27.
1. Pink Slip
The plaintiffs claim that the defendants defamed Alan Rosenberg by stating on his termination pink slip that he was not capable of performing his job. The defendants argue that employers' statements contained in a "pink slip" provided to the state unemployment office are absolutely privileged. This argument is expressly supported by the holding of the Supreme Court in Petyan v. Ellis, 200 Conn. 243, 247-48, 510 A.2d 1337
(1986). In Petyan, the court agreed that "an employer who discharges an employee has an absolute privilege when supplying the information necessary for the `unemployment notice' required by regulation [to be given to the employee immediately upon termination of employment]." Id., 247 and n. 1. "The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." Id., 246. Therefore, the defendants' statements on Alan Rosenberg's pink slip cannot support a cause of action for defamation.
2. Rice's Statement as to Malavenda's Statement
The plaintiffs claim that Rice told Alan Rosenberg that Malavenda had informed Rice that Mike, another employee, said that Alan Rosenberg was stealing materials to build his house; (Deposition, p. 87); and that Rice "received a call from [defendant] Malavenda, that she had concerns because she was told by Mike Golebewski about what was going on." (Deposition, p. 91.) The defendants argue that this statement is inadmissible hearsay and is not defamatory.
"Hearsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein. . . ." (Citations omitted, internal quotation marks omitted.) Pagano v.Ippoliti, 245 Conn. 640, 650, 716 A.2d 848 (1998). Hearsay statements are inadmissible absent a recognized exception. Statev. Oquendo, 223 Conn. 635, 664, 613 A.2d 1300 (1992), and cannot be "relied upon to support [a] motion for summary judgment."Fogarty v. Rashaw, 193 Conn. 442, 444, 476 A.2d 582 (1984). The statement in question here is hearsay and, absent valid claim by the plaintiffs that it qualifies for an exception, it is inadmissible and thus cannot support the plaintiffs' cause of action for defamation.[9]
CT Page 14333
3. Defendants' Statements at the Executive Session
The plaintiffs contend that the following statements made by the defendants at the executive session are defamatory: (1) "They indicated . . . that I failed to protect the building's roof cover when I was the clerk of the works, years back. . . . A contractor was doing roof replacements and he covered one of the buildings for the weekend, and at that particular weekend there were 55 mile per hour winds . . . and there was water damage in one of the tenant's apartments. [Roccapriore] indicated to me that it was my fault;" (Deposition, pp. 85-86);[10] (2) "Also she indicated that it was my fault that floors that . . . I allowed the contractor to install flooring in units on top of other floors. . . . She indicated to me that I didn't do my job;" (Deposition, p. 86);[11] (3) Malavenda "indicated to me that she interviewed nine men that worked for me and that they don't like me. And Hector Cardona indicated that he interviewed three men that worked for me . . . and some of the men were not happy working under me." (Deposition, p. 87.)[12]
The defendants argue that the statements the defendants made at the executive session cannot support a cause of action for defamation because they are statements of opinion, not statements of fact. Alternatively the defendants argue that, even if one or more of these statements are defamatory, the defendants are still entitled to summary judgment pursuant to the doctrine of qualified privilege.
To support a cause of action for defamation, "the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion."Daley v. Aetna Life Casualty Co., 249 Conn. 766, 795, ___ A.2d ___ (1999). "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. . . . In a libel action, such statements of fact usually concern a person's conduct or character. . . . An opinion, on the other hand, is a personalcomment about another's conduct, qualifications or character that has some basis in fact. . . ." (Citations omitted; emphasis in original.) Goodrich v. Waterbury Republican-American, Inc.,188 Conn. 107, 111, 438 A.2d 1317 (1982). Although "this distinction [between fact and opinion] may be somewhat nebulous . . . [t]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an CT Page 14334 expression of the speaker's or writer's opinion, or as a statement of existing fact." (Citations omitted, internal quotation marks omitted.) Id., 111-12.
In Daley v. Aetna Life Casualty Co., supra, 249 Conn. 796, the Supreme Court found that the trial court did not err in stating that in order to be actionable, "[a] statement must be an expression of fact such as he is a thief. . . . [A] statement can not be an opinion such as I think he is a thief or a question such as is he a thief." (Internal quotation marks omitted.) The statements at issue here can be characterized as statements of fact and therefore can support a cause of action for defamation. At least, the statements suggest that they are based on fact, and therefore raise a genuine issue of material fact. As noted by the Supreme Court, "[w]here the court cannot reasonably characterize the allegedly libelous words as either fact or opinion because, for example, innuendo is present, this becomes an issue of fact for the jury, which would preclude a directed verdict." Goodrichv. Waterbury Republican-American, Inc., supra, 188 Conn. 112 n. 5.
In the alternative, the defendants argue that, pursuant to their affirmative defense of qualified immunity, these statements cannot support a cause of action for defamation. "The defendants must sufficiently prove five prerequisites in order to establish the defense of . . . conditional [privilege] claimed by them. The essential elements are (1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only." Miles v. Perry, 11 Conn. App. 584, 595,529 A.2d 199 (1987). As explained by the Supreme Court, "[t]here are two facets to the defense of privilege. The occasion must be one of privilege, and the privilege must not be abused. Whether the occasion is one of privilege is a question of law. [W]hether the privilege was abused . . . depends upon whether there was malice in fact . . . in uttering and broadcasting the alleged defamatory matter. . . ."(Citations omitted, internal quotation marks omitted.) Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., supra, 234 Conn. 28.
As to the first facet, "[a] qualified . . . privilege arises out of an `occasion,' such as, when one acts in the bona fide discharge of a public or private duty." Miles v. Perry, supra,11 Conn. App. 594 n. 8. "[C]ommunications between managers regarding the review of an employee's job performance . . . are protected by a qualified privilege. Such communications . . . are necessary CT Page 14335 to effectuate the interests of the employer in efficiently managing its business." Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., supra, 234 Conn. 29. The evidence presented by the defendants, and not refuted by the plaintiffs, indicates that the statements at issue here were made by Alan Rosenberg's supervisors in a closed meeting and concerned his job performance. (Affidavits of Rice, Malavenda, and Boltin.) Therefore, the statements were made in circumstances that satisfy the "occasion" facet.
However, the statements must still satisfy the "abuse" facet because a qualified privilege "does not protect a defendant who makes statements that are both defamatory and malicious." Gaudiov. Griffin Health Services Corp. , supra, 249 Conn. 545. A privilege is abused if a defendant "made the statement about the plaintiff with actual malice — that is, with knowledge of its falsity or reckless disregard as to its truth." Torosyan v.Boehringer Ingelheim Pharmaceuticals, Inc., supra, 234 Conn. 29. Thus, "[e]ven when a legitimate interest is at stake, a claim of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue. For purposes of our law of defamation, malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive." Bleich v. Ortiz,196 Conn. 498, 504, 493 A.2d 236 (1985). The issue of "whether the privilege is . . . defeated through its abuse is a question of fact to be decided by the jury." Id., 501; see also Miles v.Perry, supra, 11 Conn. App. 594 n. 8; Smith v. Shoreline Care,Ltd. Partnership, Superior Court, judicial district of New Haven at New Haven, Docket No. 360206 (May 17, 1996, Licari, J.).
In his deposition, Alan Rosenberg stated that his allegation of malice is based on the falsity of the statements the defendants made about his job performance which led to his termination, the defendants' refusal to "give [Alan Rosenberg] an opportunity to discuss anything" and the defendants' refusal to allow him to face the other employees who had a problem working with him. (Deposition, pp. 98-90.) The Supreme Court has found that a jury could reasonably conclude that a defendant acted with "improper motive" in circumstances where a "defendant's agents published a false statement in order to effectuate the plaintiff's discharge, even though they doubted the statement's veracity." Gaudio v. Griffin Health Services Corp. , supra,249 Conn. 545; Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., supra, 234 Conn. 30. Alan Rosenberg's deposition testimony CT Page 14336 is sufficient to raise a genuine issue of material fact on the issues of whether the defendants made the statements with malice. Accordingly, the defendants are not entitled to summary judgment on the plaintiffs' cause of action for defamation as it relates to the statements the defendants made at the executive session.
4. Defendant Malavenda's Statements
The plaintiff alleges that Malavenda accused Alan Rosenberg of "spending his day at dry cleaning business that he owned instead of doing his job at the Meriden Housing Authority . . . told people that he took kickbacks from contractors so that he would look the other way [and] . . . told people that he was using Housing Authority materials and supplies for a house he was building in Woodbridge." (Revised Complaint ¶¶ 24 and 25.)
The defendants do not address these statements in their memorandum in support of their motion for summary judgment, nor have they submitted any evidence regarding these statements. Because the defendants have not met their burden of showing that there are no genuine issues of material facts regarding these statements, the defendants are not entitled to summary judgment of the plaintiffs' cause of action for defamation as to these statements.
Discriminatory Discharge: Fifth Count
In the fifth count of the complaint, the plaintiffs allege that the defendants terminated Alan Rosenberg in retaliation for his assertion of a claim for workers' compensation benefits in violation of his rights under General Statutes § 31-290a. The defendants contend that they are entitled to summary judgment on this cause of action because Alan Rosenberg did not exercise his rights under the Workers' Compensation Act prior to his termination and because, when the decision to terminate Alan Rosenberg was made, the individuals who made the decision were unaware that he had been injured or that he intended to file a claim for workers' compensation benefits. The plaintiffs do not offer a specific response, but claim that they adequately stated a claim for discriminatory discharge.
According to the complaint, this cause of action is based on the plaintiffs' allegation that Alan Rosenberg suffered a work related injury on May 8, 1995, filed a report of injury and a claim for workers' compensation benefits on May 9, 1995, and was CT Page 14337 terminated on May 11, 1995. In his deposition, Alan Rosenberg stated that he was injured on May 9, 1995, and on that same day filled out a report of injury and told Rice that he had been injured. Alan Rosenberg also stated that he could not recall when he submitted the report of injury to the authority, that Rice was the only person he talked to about his injury, and that, as of the date of his termination, he had not filed any documents with the workers' compensation commission. (Deposition, pp. 103, 105, 107.)
General Statutes § 31-290a(a) provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter." According to the Connecticut Supreme Court, "[i]n setting forth the burden of proof requirements in a § 31-290a action, we look to the federal law for guidance." Ford v. Blue Cross Blue Shield ofConnecticut, Inc., 216 Conn. 40, 52, 578 A.2d 1054 (1990). "InMcDonnell Douglas Corporation v. Green, 411 U.S. 792,93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth the basic allocation of burdens and order of presentation of proof in cases involving claims of employment discrimination. The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, non-discriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. . . ." (Citations omitted; internal quotation marks omitted.) Id., 53-54. "[T]he plaintiff, to make out a prima facie case of retaliatory discharge, must establish (a) [protected activity, i.e.,] that he filed a claim for workers' compensation benefits or otherwise exercised his rights under chapter 568 of the Connecticut General Statutes CT Page 14338 [Workers' Compensation Act]; (b) an employment action disadvantaging the plaintiff; and (c) a causal connection between the protected activity and the adverse employment action." Gordonv. Yale-New Haven Hospital, Superior Court, judicial district of New Haven at New Haven, Docket No. 365472 (May 22, 1998, Levin,J.); see also Erisoty v. Merrow Machine Co., 34 Conn. App. 708,712 n. 6, 708 A.2d 643, cert. denied, 231 Conn. 908, 648 A.2d 151
(1994); Moore v. Consumer Credit Counseling Service ofConnecticut, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 522196 (December 24, 1996, Aurigemma, J.).[13] In this case, the defendants contend that the plaintiffs cannot establish the first and third elements of a prima facie case.[14]
The defendants argue that Alan Rosenberg's failure to file a claim with the workers' compensation commission prior to his termination precludes him from asserting a cause of action for discriminatory discharge. Although no reported decisions by the Appellate Court address this issue, the judges of the Superior Court, in construing the portion of § 31-290a that protects employees who have "otherwise exercised" the rights afforded to them under the statute, have explained that "the statute's plain language, demonstrates that the actual filing of a claim is not a prerequisite to a recovery." Nguyen v. Newberry Industries, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 571319 (October 31, 1997, Hale, J.); Boucherv. Hilton Mechanical Contractors, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 300154 (February 3, 1995, DeMayo, J.); Bundock v. Waste Management of Connecticut,Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 123903 (January 26, 1993, Lewis, J.) (8 Conn. L. Rptr. 263). As explained by the court in Bundock, "[i]f the actual filing of a claim was a prerequisite to a recovery under the statute, there would be no need to refer to someone who `otherwise exercised' his rights." Bundock v. Waste Management ofConnecticut, Inc., supra, Superior Court, Docket No. 123903. In the above-referenced cases, each court determined that the plaintiff's allegations were sufficient to sustain a cause of action under § 31-290a where the plaintiff alleged that the defendants were aware that the plaintiff had suffered a work related injury or intended to file a claim for workers' compensation benefits.
Although Alan Rosenberg stated that he did not remember the date he submitted his first report of injury to the authority, he CT Page 14339 did state that on May 9, 1995, he told Rice that he had sustained a work related injury and that Rice knew it was "standard procedure" to file a first report of injury before filing a workers' compensation claim. (Deposition, pp. 98, 107.) Therefore, the plaintiffs have raised a genuine issue of material fact as to whether Alan Rosenberg exercised his rights under the workers' compensation statute.
To establish the requisite casual connection between the protected activity and the adverse employment action, "[t]he plaintiffs must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the employees because they had exercised their rights under the Workers' Compensation Act. . . . Without some proof of an improper motive, [a plaintiff's] case must fail. . . ." (Citations omitted; internal quotation marks omitted.) Erisoty v.Merrow Machine Co., supra, 34 Conn. App. 711. The general rule under Connecticut law is that "[s]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. . . ." (Citations omitted; internal quotation marks omitted.) Suarez v. Dickmont PlasticsCorp. , 229 Conn. 99, 111, 639 A.2d 507 (1994). Nevertheless, "even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 250,618 A.2d 506 (1992).
In the present case, the plaintiffs imply that the defendants' termination of Alan Rosenberg so soon after his injury and his report thereof is sufficient to raise a genuine issue of fact as to the defendants' motivation. The defendants argue that the individuals who made the decision to terminate Alan Rosenberg's employment were not aware that he had been injured. The defendants submitted affidavits of three of the six individuals who were involved in the termination decision in which these individuals state that at the time the decision was made, they were not aware that Alan Rosenberg had injured himself or that he intended to file a claim for benefits and that this information did not play any role in their decision. (Affidavits of Rice, Boltin, and Malavenda.)
However, Alan Rosenberg's deposition testimony directly contradicts Rice's statements regarding his knowledge of Alan CT Page 14340 Rosenberg's injury. (Deposition, p. 98.) Moreover, judges of the Superior Court have explained that "[a] causal connection may be established indirectly by showing that the protected activity was followed closely by discriminatory treatment." (Internal quotation marks omitted.) Gordon v. Yale-New Haven Hospital, supra, Superior Court, Docket No. 365472; Moore v. ConsumerCredit Counseling Service of Connecticut, Inc., supra, Superior Court, Docket No. 522196. The plaintiffs' undisputed contention that Alan Rosenberg filed his first report of injury with the authority prior to his termination; (Deposition, pp. 98, 103); raises a question of material fact. Further, a question of material fact remains as to the motive of the three other individuals who participated in the decision to terminate Alan Rosenberg. When a defendant's motive and intent remain as a question of material fact, the defendant is not entitled to summary judgment on the plaintiff's cause of action for discriminatory discharge. Lindblom v. Shawmut Bank, N.A., Superior Court, judicial district of Danbury, Docket No. 324852 (September 29, 1998, Radcliffe, J.); Schrimp v. Bozzuto's, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 392667 (September 11, 1998, Zoarski, J.); Cowan v.Warner-Lambert Co., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 32564 (November 5, 1994,Cocco, J.). Therefore, the defendants are not entitled to summary judgment on the plaintiffs' cause of action for discriminatory discharge.
Loss of Consortium (Sixth Count)
In the sixth count of the complaint, Lynne Rosenberg alleges loss of consortium based on Alan Rosenberg's causes of action for breach of contract, promissory estoppel, and intentional infliction of emotional distress. At oral argument, the plaintiffs argued that this cause of action is based on all other counts of the complaint. The defendants argue that if they are entitled to summary judgment on the plaintiffs' other causes of action, they are also entitled to summary judgment on this cause of action because, as a derivative claim, it cannot stand on its own. At oral argument, the defendants also argued that a cause of action for loss of consortium cannot, as a matter of law, attach to a cause of action for breach of contract. They contend, therefore, that if the plaintiffs' cause of action for breach of contract is the only other claim to survive summary judgment, the defendants are entitled to summary judgment on the cause of action for loss of consortium. CT Page 14341
As to the defendants' first contention, because a cause of action for loss of consortium "is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." Hopson v.St. Mary's Hospital, 176 Conn. 485, 494, 408 A.2d 260 (1979). Due to the derivative nature of this cause of action, the Appellate Court has upheld trial court decisions directing a verdict on a loss of consortium claim following dismissal of the injured spouse's claims; Parker v. Shaker Real Estate, Inc.,47 Conn. App. 489, 496, 705 A.2d 210 (1998); and striking a loss of consortium claim where the injured spouse's claims were stricken;Greene v. Metals Selling Corp. , 3 Conn. App. 40, 47, 484 A.2d 478
(1984). Therefore, if the defendants are entitled to summary judgment on all of the plaintiffs' causes of action, they are also entitled to summary judgment on the plaintiffs' cause of action for loss of consortium.
If the plaintiffs' cause of action for breach of contract is the only other cause of action to survive, the court must consider the defendants' contention that this cause of action cannot support a loss of consortium claim. In Hopson v. St.Mary's Hospital, supra, 176 Conn. 496, the court held that "either spouse has a claim for loss of consortium shown to arise from a personal injury to the other spouse caused by the negligence of a third person. . . ." A review of published decisions suggests that courts have not expressly held that this cause of action cannot be based on a cause of action for breach of contract. However, the Appellate Court and at least one judge of the Superior Court have determined that, under Hopson, a spouse cannot maintain an action for loss of consortium if the injured spouse's damages are pecuniary only, even if the injured spouse's cause of action is based on negligence. See Kuhn v.Bridgeport Ambulance Service, 11 Conn. App. 179, 183, 526 A.2d 11
(1987); Dionisio v. Buzi, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 260602 (July 2, 1992, Lewis,J.) (7 C.S.C.R. 841, 842). These decisions, as well as the language used by the court in Hopson, suggest that a cause of action for loss of consortium must be based on some form of illness or bodily harm to the injured spouse caused by the defendant's misconduct.[15] However, this court need not determine whether if the plaintiffs' cause of action for breach of contract were the only other claim that survived summary judgment, the defendants would be entitled to summary judgment on CT Page 14342 Lynne Rosenberg's cause of action for loss of consortium. The cause of action for defamation, although in reduced form, with its unplumbed claim for damages, has survived. It is sufficiently tortious in nature and its claim for damages is broad enough to defeat summary judgment.
The defendants are entitled to summary judgment on the plaintiffs' causes of action for promissory estoppel, intentional infliction of emotional distress, negligent inflicition of emotional distress, and defamation, but only as to the statements the defendants made on Alan Rosenberg's pink slip and Rice's statement as to what another employee told Malavenda. To that extent this motion is granted. The defendants are not entitled to summary judgment on the plaintiffs' causes of action for breach of contract, discriminatory discharge, loss of consortium, and defamation as to defendants' statements at the executive session and Malavenda's statements. To that extent this motion is denied.
Joseph A. Licari Jr., Judge