[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE DATED MARCH 3, 2000 (#118)
The plaintiff, Arlie Thompson, alleges the following facts in her second amended complaint. In October, 1997, the defendant, Bridgeport Hospital, orally informed the plaintiff, a nine year employee then working as a technician assistant, that her department was closing and that she would be informed as to Layoff procedures at some future time. Despite her repeated requests, the plaintiff did not receive written notice that she would be laid of f or any information as to layoff CT Page 8364 procedures. In November, 1997, the plaintiff's supervisor orally informed her that she was, to be terminated effective December 1, 1997. At the time of her layoff, the plaintiff did not receive severance pay, accrued vacation pay and other benefits she claims were due to her. In January, 1998, after the plaintiff was terminated, she received a written unemployment notice.
The defendant notified the plaintiff in December, 1997, that a clerical position was available within the hospital. She accepted the position and was scheduled to begin employment on January 12, 1998. The defendant sent her for a new security badge, measured her for a new uniform and gave her a security password for the computer system. Relying on the defendant's offer, the plaintiff quit her part-time morning jobs, which conflicted with the hours she would be required to work in the new position. Shortly thereafter, the defendant informed the plaintiff that she would be required to take a test for the clerical position. When the plaintiff did not pass the test, the defendant revoked its offer. The plaintiff requested copies of other exam and the answer key, but the defendant refused to provide them to her. The defendant also did not respond to the plaintiff's request to see her personnel file.
On April 21, 1998, the plaintiff filed a complaint against the defendant in which she asserted causes of actions for breach of express contract (count one), breach of implied contract (count two), breach of implied covenant of good faith and fair dealing (count three) promissory estoppel (count four), negligent infliction of emotional distress (count five), negligent misrepresentation (count six), violation of General Statutes § 31-71a through § 31-71i (count seven), violation of General Statutes § 31-76k (count eight), violation of General Statutes § 31-128g (count nine), violation of General Statutes §38a-537 (count ten) and violation of 29 U.S.C. § 1161 et. seq. (count eleven). On May 10, 1999, defendant filed a motion to strike counts five, nine, ten and eleven. At oral argument, the court, Nadeau, J., granted the defendant's motion to strike as to counts nine, ten and eleven.[1] In a memorandum of decision dated November 9, 1999, the court, Nadeau, J., granted the motion to strike as to count five.
On November 23, 1999, the plaintiff filed a request for leave to file a second amended complaint. In the second amended complaint, the plaintiff asserts the same eleven causes of actions that she asserted in the previous complaint. The defendant filed an objection to the request to amend which was overruled without prejudice by the court, Melville, J., on January 18, 2000. In its order, the court stated: objection herein stated raises an issue more properly treated by a motion to strike than an objection to an amendment. See Practice Book § 10-60(b).[2] On March 6, 2000, the defendant filed a motion to strike counts one through CT Page 8365 six and nine through eleven of the second amended complaint. The plaintiff and the defendant both filed memoranda of law. The motion was heard by the court on September 11, 2000.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998).[3] "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp.,240 Conn. 576, 580, 693 A.2d 293 (1997). "the facts provable in the complaint would support a cause of action, the motion to strike must be denied . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted; internal quotation marks omitted.) Pamela B. v. Ment, 244 Conn. 296, 308,709 A.2d 1089 (1998).
The defendant argues that counts nine, ten and eleven should be stricken because these counts were previously stricken by the court on June 21, 1999, and the plaintiff did not file her amended complaint until November 23, 1999, and thus failed to replead within fifteen days as required by Practice Book § 10-44. The plaintiff contends that her repleading was timely and that § 10-44 only applies to circumstances in which an entire pleading is stricken. Practice Book § 10-44
provides: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint has been stricken, and the party whose pleading has been so stricken fails to file a new pleading within that fifteen-day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint."
Practice Book § 157 (now Practice Book § 10-44] does not preclude an attempt to replead under § 176 [now Practice Book §10-60][4] after the expiration of the fifteen day period following the granting of a motion to strike. Section 157 provides that here no new pleading is filed within the fifteen day period, the court `may upon motion' render judgment against the party whose leading has been stricken. The use of the phrase `may upon motion' demonstrates that judgment does not enter automatically after the failure to replead during the time period set out in § 57. Since further action is required to obtain judgment, the arty against whom judgment is sought may avail herself of the opportunity to request leave to file an amended or CT Page 8366 substitute complaint pursuant to § 176 at any time prior to the rendering of judgment.
This view of Practice Book § 176 is consistent with the policy underlying General Statutes § 52-121 (a). That statute provides that "[a]ny pleading in any civil action may be filed after the expiration of the time fixed by statute or by a rule of court until the court has heard any action for judgment by default or nonsuit for failure to plead which has been filed in writing with the clerk of the court in which such cause is bending." Dennison v. Klotz, 12 Conn. App. 570, 574-75, 532 A.2d 1311
(1987), cert. denied, 206 Conn. 803, 535 A.2d 1317 (1988) [Connecticut General Statutes] § 10-44 does not provide for judgment to enter after 15 days, only that the court `may, upon motion, enter judgment.' As with other pleading requirements, this gives the court discretion to allow a pleading outside the prescribed time period. (Internal quotation marks omitted.) Shpak v. Beard, Superior Court, judicial district of New Haven at New Haven, Docket No. 369337 (November 20, 1998, Hartmere, J.) (23 Conn.L.Rptr. 412, 413).
"[T]he filing of a late substitute pleading does not deprive the court of its discretionary power in allowing a pleading outside the prescribed time period. Thus, courts have allowed the submission of a substitute complaint beyond the fifteen day period set forth in Practice Book § 157, now Practice Book (1998 Rev.) § 10-44. See Shpak v. Beard, [supra, 23 Conn.L.Rptr. 412]. Accordingly, the fact that the pleading was filed one day late would not necessarily mean that the amended complaint was improper and outside the scope of the court's consideration. This is especially true when the substituted pleading is filed in conjunction with Practice Book § 176, now Practice Book (1998 rev.) § 10-60, which allows an amended complaint to be filed at any time with the consent of the judicial authority." Rowlands v.Commodore Commons Condominium Assn., Superior Court, judicial District of Ansonia/Milford at Milford, Docket No. 63281 (July 1999, Flynn J.). Thus, in several cases, judges of the Superior Court exercised their discretion and allowed plaintiffs to file mended complaints beyond the fifteen day period set forth in § 10-44. See D'Amato v. Carpenter andChapman, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 250606 (December 13, 1998, Purtill, J.) (4 C.S.C.R. 103); Shpak v. Beard, supra, 23 Conn.L.Rptr. 412; Allard v. JohnsonMemorial Hospital, Superior Court, judicial district of Tolland at Rockville, Docket No. 42988 (August 9, 1990, Jackaway J.); Loe v.Niland, Superior Court, judicial district of Waterbury, Docket Nos. 78808, 78809, 78810 (November 2, 1988, Healey, J.) (3 C.S.C.R. 923).
Therefore, the court has discretion to allow the plaintiff to file her amended complaint beyond the fifteen day limitation articulated in CT Page 8367 Practice Book § 10-44. Although the plaintiff waited for over five months after the motion to strike counts nine, ten and eleven was granted before requesting permission to replead, she did file her amended pleading in conjunction with a request to amend pursuant to Practice Book § 10-60. In addition, during this time, the remaining counts of the complaint were still pending. Therefore, allowing the plaintiff to amend the complaint after the fifteen day period would not be unduly prejudicial or harmful to the defendant. Accordingly, the court exercises its discretion and denies the defendant's motion to strike counts nine, ten and eleven on the basis of timeliness.
The court now considers whether the plaintiff has stated causes of action upon which relief can be granted in counts one through six and counts nine through eleven. In count one, the plaintiff asserts that the defendant's personnel policy and other documents created an express contract and that the defendant reached this contract by 1) failing to give the plaintiff written and oral notice regarding termination; 2) failing to provide her with an unemployment notice; 3) failing to pay the severance pay, vacation pay and other benefits after plaintiff severance pay, vacation pay and other benefits after she was terminated; 4) failing to offer her another position; 5) offering her a position and then revoking the offer after she accepted it; 6) requiring her to take a test for the new position; 7) failing to provide her with copies of the test and answer key and; 8) failing to reinstate the plaintiff in the position she was offered and accepted. The defendant contends that count one should be stricken because the plaintiff fails to allege facts to support her contention that she had an express contract of employment with the defendant. The plaintiff counters that she does not take issue with the fact that her employment was terminated but rather with the manner in which she was terminated. She claims that the defendant's documents created an express contract as to the specific terms of her employment pertaining to termination, notice, severance pay, seniority rights, re-employment rights, vacation pay and benefits, testing and reinstatement and that the defendant reached each of the terms of this contract.
For a contract to exist, "[t]he intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were." (Internal quotation marks omitted.) Sloan v. Kubitsky, 48 Conn. App. 835, 839, 712 A.2d 966
(1998), appeal dismissed, 248 Conn. 670, 728 A.2d 1095 (1999). "Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements." (Internal quotation marks omitted.) Suffield Development Associates Ltd. Partnership v. Society forSavings, 243 Conn. 832, 843, 708 A.2d 1361 (1998) ["Traditionally, an employment contract of indefinite duration is terminable at the will of CT Page 8368 either party." Battista v. United Illuminating Co., 10 Conn. App. 486,495, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352
(1987). Under an at will employment arrangement the employer can discharge the worker any time for any reason as long as in so doing the employer does not violate an important public policy. Carbone v. AtlanticRichfield Co., 204 Conn. 460, 467, 528 A.2d 1137 (1987). "Certain material terms such as the duration, salary, fringe benefits and other conditions of employment are deemed essential to an employment contract. See D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, [202 Conn. 206, 215, 520 A.2d 217 (1987)]. Mere representations indicating an intent to enter into a future contract for employment do not give rise to contractual liability [A] promise indicating intent to make a future employment contract, absent an agreement on the material terms of employment, is not binding as a contract regardless of the promisor's partial performance." Geary v. Wentworth Laboratories, Inc.,60 Conn. App. 622, 628, 760 A.2d 969 (2000).
Construing the factual allegations in the complaint in the manner most favorable to the plaintiff, as to both of the employment positions the plaintiff refers to in her complaint, the plaintiff fails to include any specific factual allegations concerning the formation and terms of the contracts she claims she had with the defendant. Moreover, the plaintiff fails to allege that she had anything other than an at will employment relationship with the defendant or that the defendant violated an public policy in terminating her employment. important therefore, the court grants the defendant's motion to strike count one.
In count two, the plaintiff asserts that the factual allegations she made in count one also support a cause of action for breach of an implied contract. The defendant contends that this count should be stricken on the same basis as count one. the plaintiff again responds that this cause of action is not based on the termination of her employment, but the manner thereof and the way she was treated in regard to the clerical position.
"At the outset . . . all employer-employee relationships not governed by express contacts involve some type of implied `contract' of employment. . . . To determine the contents of any particular implied contract of employment, the factual circumstances of the parties' relationship must be examined in light of legal rules governing unilateral contracts." (Citations omitted.) Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., 234 Conn. 1, 13, 662 A.2d 89 (1995). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like." Id. 14. An employment at will relationship can, however, be "modified by CT Page 8369 agreement of the parties." Id. 15. To sustain a cause of action based on the alleged existence of an implied agreement between the parties, the plaintiff [has] the burden of proving . . . that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause. (Citations omitted, internal quotation marks omitted.) Id. "A contract implied in fact, like an express contract, depends on actual agreement." (Internal quotation marks omitted.) Coelhov. Posi-Seal International, Inc., 208 Conn. 106, 111-12, 544 A.2d 170
(1988). "A contractual promise cannot be created by plucking out phrases out of context; there must be a meeting of minds between the parties. . . . In order to support contractual liability, the defendants' representations must be sufficiently to manifest a present intention on the part of the definite manifest a present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff." (Citations omitted; internal quotation marks omitted.) Burnhamv. Karl Gelb, P.C., 50 Conn. App. 385, 389, 717 A.2d 811 (1998), affirmed on other grounds, 252 Conn. 153, 745 A.2d 178 (2000).
When the facts alleged in the complaint are construed in favor of the plaintiff, it is apparent that the plaintiff fails allege the terms of an implied contract. She fails to allege that the defendant made any definite representations to her indicating its intention to enter into a contract with her. Her allegations that she received a new security badge, new uniform and computer password from the defendant are not sufficient to show an implied contract. Therefore, the court grants the defendant's motion to strike count two.
In count three, the plaintiff asserts that the defendant breached an implied covenant of good faith and fair dealing by not providing her with the information she requested regarding the layoff, her unemployment notice and her personnel file. The defendant contends that this count should be stricken on the same basis as counts one and two. The plaintiff responds that the implied covenant of good faith and fair dealing was part of the contractual commitment between the parties.
In Connecticut, it is well established that every contract, express or implied, carries with it an implied covenant of good faith and fair dealing, the bad faith violation of which is actionable in tort. SeeGupta v. New Britain General Hospital, 239 Conn. 574, 598, 687 A.2d 111
(1996). The Supreme Court has, however, limited the circumstances in which such a covenant can be applied to employment at will relationships. Accordingly, the court has stated that [w]here employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right [to discharge at will] . . . CT Page 8370
We see no reason . . . to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety . . . derived from some important violation of public policy. (Internal quotation marks omitted.) Magnan v. Anaconda Industries, Inc.,193 Conn. 558, 572. 479 A.2d 781 (1984).
"The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . [T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing." (Citations omitted; internal quotation marks omitted.) Hoskins v. Titan Value Equities Group, Inc., 252 Conn. 789,793, 749 A.2d 1144 (2000).
As noted above, the plaintiff fails to allege facts sufficient to show that she had either an express or implied contract of employment with the defendant. Furthermore, to the extent that the plaintiff was employed at will, in order to sustain this cause of action she is required to allege that the defendant's conduct involved "impropriety . . . derived from some important violation of public policy." Magnan v. AnacondaIndustries, Inc., supra. 193 Conn. 572. She has not done so and thus, has not sufficiently alleged a claim for a breach of duty of good faith and fair dealing. Therefore, the court grants the defendant's motion to strike count three.
In count four, the plaintiff asserts a cause of action for promissory estoppel. The plaintiff alleges that the defendant's conduct in failing to adequately inform her about the layoff, and offering her the clerical position induced reasonable reliance on her part. She also alleges that she reasonably relied on the defendant's offer by quitting her part-time job to take the clerical position and that the defendant should have known its actions would induce reasonable reliance on her part. The defendant contends that count four should be stricken because the plaintiff fails to allege that the defendant promised to terminate the plaintiff's employment only for just cause. The plaintiff responds that she has adequately alleged that the defendant made clear definite promises to her. She specifically cites to her allegation that she did not receive an unemployment notice upon termination and to her allegations regarding the clerical position.
Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. . . . [The Supreme] court has recognized, however, the development of "liability in contract for action CT Page 8371 induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor. . . ." (Citations omitted; internal quotation marks omitted.) D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, supra, 202 Conn. 213. Section 90 of the Restatement Second [Contracts] states that under the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. Id. Thus, a plaintiff asserting a cause of action for promissory estoppel must plead and prove the following four elements: 1) the promisor made a clear and definite promise; 2) the promisee reasonably relied on the promise; 3) the promise induced the action taken by the promisee; and 4) injustice can be avoided only by enforcement of the promise. Id. 213-215. The promise must be clear and definite and must contain the material terms that are essential to the formation of a contract. Id. 215.
When all the facts alleged in the complaint are construed in favor of the plaintiff, the allegations are not sufficient to allege a cause of action for promissory estoppel for two reasons. First, the plaintiff does not include allegations specifying any definite promises that were made to her. Statements by employers which do not contain "any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and her salary and fringe benefits . . ." and "[a]t most [constitute] representations to the plaintiff concerning the expectation of a future contract . . ." and are neither sufficiently promissory nor sufficiently definite to support a cause of action for promissory estoppel. Id. Second, she alleges that she was offered the clerical position but does not allege that her employment in that position would be other than at will. "The allegations, at most, amount to an agreement to enter into an at will employment relationship and not a contract to employ the plaintiff for a specific term." Corrado v. Leonard, Superior Court, judicial district of Danbury. Docket No. 307646 (March 26, 1992, Fuller,J.)[5] Therefore, the court grants the defendant's motion to strike count four of the amended complaint.
In count five, the plaintiff asserts a cause of action for negligent infliction of emotional distress. She bases this cause of action on her allegations that the defendant breached its duty reasonable care by intentionally withholding information from her regarding the layoff and the results of the test for the clerical position and by offering her the clerical position and then revoking its offer. The plaintiff also alleges that during the termination process, she was treated in an inconsiderate planner by another employee and that the defendant failed to provide her CT Page 8372 with information regarding her health coverage. The defendant notes that this cause of action was stricken from the plaintiff's first amended complaint and that the allegations she adds to this cause of action in her second amended complaint do not contribute to its substance. The defendant contends that this should be stricken because the plaintiff's allegations regarding the defendant's conduct are still not sufficient to support a cause of action for negligent infliction of emotional distress.
"When the allegations of an amended complaint appear to be the same in substance as those of an earlier complaint that was stricken, the defendant may challenge the amended complaint by filing a request to revise . . . or a second motion to strike." (Citation omitted.) PLProperties, Inc. v. Schnip Development Corp., 35 Conn. App. 46, 50,643 A.2d 1302, cert. denied, 231 Conn. 931, 648 A.2d 155 (1994). "If the plaintiff . . . has in act merely restated the original cause of action, the defendant should prevail on either pleading." Id. "[A]fter a motion to strike has been granted, pursuant to Practice Book § 10-44, a party has an opportunity to plead over, so that any deficiencies in the prior pleading may be rectified if the pleader has a factual basis for doing so. While a party runs afoul of the doctrine of the law of the case if he or she simply repeats the pleading that has previously been stricken, a reformulated pleading must be assessed ab initio to determine whether it states a cause of action." (Emphasis in original) Mazza v.Connecticut Light Power, Superior Court, judicial district of Waterbury at Waterbury, Docket No. 130546 (March 9, 2000, Hodgson, J.).
In the fifth count of the first amended complaint, the plaintiff based her cause of action for negligent infliction of emotional distress on her allegations that the defendant breached its duty of reasonable care by inadequately notifying her about the layoff, not providing her with unemployment notice and offering her the clerical position and then revoking its offer. The allegations in the present complaint differ only slightly from the allegations in the prior complaint in that the plaintiff now includes conclusory allegations that one of the defendant's employees treated her in an inconsiderate humiliating and embarrassing manner and failed to provide her with information regarding the continuation of her benefits and that the defendant should have known that this would cause her distress.
To allege a negligent infliction of emotional distress claim, the plaintiff has the burden of pleading that the defendant should have realized that its conduct involving an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily "harm." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp., 243 Conn. 66, 88, CT Page 8373700 A.2d 655 (1997). "[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Id. 88-89. There must be "evidence that the manner of the plaintiff's termination from employment was different . . . from the usual termination of employment or that it was done in [a] way that would cause . . . more than the normal upset that would result from any termination of employment." (Internal quotation marks omitted.) Chieffalo v. Norden Systems, Inc., 49 Conn. App. 474, 480-481, 714 A.2d 1261 (1998)
In ruling on count five of the plaintiff's previous complaint, the court relied on well recognized authority regarding a cause of action for negligent infliction of emotional distress. As to the plaintiff's allegations regarding her layoff, the court noted that "the allegations imply that the plaintiff was an employee-at-will and could be fired at any time. The complaint alleges that the defendant first told the plaintiff in October, 1997, more than one month before her termination, that her department would be closing. The complaint also alleges that the defendant informed the plaintiff in the month of November, well before her actual termination, that she would be terminated December 1, 1997. The fact that the defendant chose to give the plaintiff oral rather than written notice, and did not respond to her requests for information as to Layoff procedures, is irrelevant. See Pavliscak v. Bridgeport Hospital,48 Conn. App. 580, 598, 711 A.2d 747 (1998). . . . Accordingly, the defendant's actions in terminating the plaintiff, as alleged in the plaintiff's complaint, were not unreasonable, were not done in a way that would cause more than the normal upset associated with termination of employment and do not support a claim for negligent infliction of emotional distress. See Chieffalo v. Norden Systems, Inc.,49 Conn. App. 474, 481, 714 A.2d 1261 (1998)." Thompson v. BridgeportHospital, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 352686 (November 17, 1999, Nadeau, J.)
As to the plaintiff's allegations regarding her failure to receive benefits, the court noted that "the plaintiff does not allege that she had an agreement with the defendant or that a hospital policy existed at the time of her termination that entitled her to severance pay and other benefits. Moreover, even if she had made such allegations, breach of an agreement or a hospital policy by the defendant, without more, would not be a sufficient basis on which to claim emotional distress. See Dowlingv. First Federal Bank, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket. No. 533172 (June 30, 1995, Corradino,CT Page 8374J.). . . . In the present case . . . the plaintiff does not allege facts establishing that the defendant should have anticipated that the plaintiff would suffer emotional distress due to loss of severance pay, accrued vacation pay or other benefits at the time of termination. Nor does the plaintiff allege that she had a special status or relationship with the hospital that would have made failure to give her severance pay and other benefits tortious conduct in the absence of an agreement or hospital policy." Thompson v. Bridgeport Hospital, supra, Superior Court, Docket No. 352686. In addition the court explained that "the plaintiff also fails to allege that loss of pay and benefits constituted unreasonable conduct, or behavior, at the time of discharge that was inconsiderate, humiliating or embarrassing." (Internal quotation marks omitted.) Id. Although the plaintiff has added allegations regarding the deficiencies cited by the court, the allegations are conclusory and are not adequately supported by the facts.
Finally as to the plaintiff's allegations regarding the clerical position, the court explained that [a]llegations that the defendant acted unreasonably in revoking the business/clerical position must also fail because they relate not to the `termination process' but to the hiring process. See Parsons v. United Technologies Corp., supra, 243 Conn. 88. Although the plaintiff accepted the defendant's offer, she had not vet started her new job when the defendant imposed a test and apparently on its result decided not to hire her. . . . The plaintiff does not deny that she was an employee-at-will or allege that the test she was asked to take was unrelated to the requirements of her new job. . . . [T]he defendant's decision not to hire the plaintiff after she failed the required test does not, as a matter of law, support a finding of negligent infliction of emotional distress in the employment context.Thompson v. Bridgeport Hospital, supra, Superior Court, Docket No. 352686. When a plaintiff merely expands upon the allegations of a previously stricken complaint but does not do so in a way in which sets forth a cause of action, a second motion to strike should be granted.PL Properties, Inc. v. Schnip Development Corp., supra,35 Conn. App. 50-51. The court grants the defendant's motion to strike count five.
In count six, the plaintiff alleges that the defendant made misrepresentations of fact to her regarding her layoff and the clerical position. The plaintiff also alleges that the defendant knew or should have known that she would rely on the representations and that she detrimentally relied on them when she quit her part time job, failed to search for other employment and failed to complete an application for unemployment benefits. The defendant contends that this count should be stricken because the plaintiff does not allege that the defendant made CT Page 8375 false representations to her regarding the duration of her employment in the new position. In response, the plaintiff argues that the allegations she made about the defendant's conduct pertaining to the layoff and the clerical position state a legally sufficient claim for false misrepresentation.
The Connecticut Supreme Court "has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. . . . The governing principles are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977) One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Citations omitted; internal quotation marks omitted.) Williams Ford, Inc. v. HartfordCourant Co., 232 Conn. 559, 575-76, 657 A.2d 212 (1995). "[F]alsity is an essential element of a negligent misrepresentation claim, and [the plaintiff] bears the burden of demonstrating that the defendants made certain representations . . . that were in fact untrue."Daley v. Aetna Life Casualty Co., 249 Conn. 766, 792-92, 734 A.2d 112
(1999). The plaintiff does not sufficiently allege that the defendant made misrepresentations of fact to her which were in fact untrue at the time they were made. Therefore, the court grants the defendant's motion to strike count six.
In count nine, the plaintiff alleges that she has a cause of action under General Statutes § 31-128g based on her failure to receive her personnel file. The defendant contends that this count should be stricken because § 31-128g does not create a private cause of action. The plaintiff responds that the Legislative intent of § 31-128g was to create a private cause of action.
General Statutes § 31-128g governs the procedure an employer must follow when an employee requests a copy of his or her personnel file. Section 31-128g provides, in pertinent part: Each employer shall, within a reasonable time after receipt of a written request from an employee, provide such employee with a copy of all or part of his personnel file . . . provided such request reasonably identifies the materials to be copied . . . According to the legislative intent of the statute,[6] if an employer fails to comply with an employee's request for a copy of his or her file, the employee's remedy is to complain to the Labor Commissioner pursuant to General Statutes § 31-2 (a).[7] Turzer v.CT Page 8376Connecticut National Bank, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 279671 (October 10, 1991, Spear, J.) (5 Conn.L.Rptr. 119). In addition, judges of the Superior Court have concluded that [t]he doctrine of primary jurisdiction[8]
militates against the court taking jurisdiction [over alleged violations of § 31-128g]. . . . It is well established that resort to the administrative process is generally a prerequisite to involving the jurisdiction of a court. . . . Ordinarily, a court should not act upon subject matter that is peculiarly within the agency's specialized field without giving the agency an opportunity to apply its expertise . . . The doctrine of primary jurisdiction militates in favor of this claim going first to the Labor Commissioner. (Citations omitted; internal quotation marks omitted.) Duncan v. Junior Achievement,Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 225878 (January 27, 2000, Skolnick, J., see alsoDais v. Laidlaw Transit, Inc., Superior Court, judicia1 district of Stamford/Norwalk at Stamford, Docket No. 146079 (March 29, 1996, RyanJ.); Turzer v. Connecticut National Bank, supra, 5 Conn.L.Rptr. 119.
In accordance with the doctrine of primary jurisdiction the plaintiff does not have a private cause of action against the defendant under § 31-128g. The plaintiff failed to pursue the administrative process available to her when the defendant failed to disclose her personnel file. Therefore, the court grants the defendant's motion to strike count nine.
In count ten, the plaintiff alleges that her termination affected her health care benefits and that the defendant's failure to give her notice of the status of her health insurance plan constitutes a violation of General Statutes § 38a-537. The defendant contends that count ten should be stricken because the statute is preempted by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq., and because the plaintiff does not allege that the defendant canceled her group health insurance policy. The plaintiff responds by referring to the Consolidated Omnibus Budget Reconciliation Act (COBRA) 29 U.S.C. § 1161
(a) et. seq., which she characterizes as the companion statute to § 38a-537. She alleges that pursuant to COBRA, employers are required to provide notice of "qualifying events" which affect employees' group health coverage to provide such employees with the opportunity to continue their coverage.
General Statutes § 38a-537 governs the procedure employers must follow to notify their employees of cancellations or discontinuations of benefits as well as to notify them of transfers of coverage, failure to procure coverage and retroactive coverage. Section 38a-537 (a) provides, in part: "Any individual, partnership, corporation, or unincorporated CT Page 8377 association providing group health insurance coverage for its employees shall furnish each insured employee, upon cancellation or discontinuation of such health insurance, notice of the cancellation or discontinuation of such insurance. The notice shall be mailed or delivered to the insured employee not less than fifteen days next preceding the effective date of cancellation or discontinuation. Any individual or any such entity which fails to provide timely notice shall be fined not more than one thousand dollars for each violation. The Labor Commissioner shall have the authority to assess all such fines."
ERISA is a comprehensive regulation of employee welfare and pension benefits [that] extends to those that provide medical, surgical, or hospital care or benefits for plan participants or their beneficiaries through the purchase of insurance or otherwise. . . . The federal statute . . . controls the administration of benefits plans . . . by imposing reporting and disclosure mandates . . . participation and vesting requirements . . . funding standards . . . and fiduciary responsibilities for plan administrators. . . . It envisions administrative oversight, imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme. . . . It also preempts some state law. [Section 514 of ERISA], 29 U.S.C. § 1144. New York State Conference of Blue Cross Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 650-51,115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The preemption provision of ERISA,29 U.S.C. § 1144 (a) (1994), preempts any state law that `may now or hereafter relate to any employee benefit plan. . . .' (Emphasis added.)Napoletano v. CIGNA Healthcare of Connecticut, Inc., 238 Conn. 216, 233,680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 1175 S.Ct. 1106,137 L.Ed.2d 308.[9]
A state law "relates to" an employee benefit plan if it "attempt[s] to prescribe the substantive administrative aspects of a plan, such as a determination of an employee's eligibility, the nature and amount of employee benefits, the amount of an employer's contribution to a plan, and the rules and regulations under which the plan operates." Id., 244. The [United States] Department of Labor issued an opinion . . . in which it concluded that "subsections (a), (b), and (c) of section 38a-357 are preempted by ERISA insofar as they are applied, directly or indirectly, to employee benefit plans covered by Title I of ERISA. U.S. Dept. of Labor Adv. Op. to Ms. Sherry L. Dominick (February 22, 1996)."[10] Duncan v.Junior Achievement, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 335878 (June 26, 1997, Skolnick, J.) (19 Conn.L.Rptr. 669, 671). [Because] the plaintiff's General Statutes §38a-537 [claim is] based on the same duty to inform that may give rise to a violation of a fiduciary duty claim under ERISA, the plaintiff's claims are preempted by § 404(a)(1) of ERISA. Id., 672. Therefore, the court grants the defendant's motion to strike CT Page 8378 count ten because § 38a-537 is preempted by ERISA.
In count eleven, the plaintiff alleges a cause of action under29 U.S.C. § 1161 et. seq. (COBRA) based on the defendant's failure to give her notice of the status of her health plan. The defendant contends that this count should be stricken because, pursuant to 29 U.S.C. § 1132
(e), only the federal district court has jurisdiction over a cause of action based on COBRA.
COBRA requires that a group health plan provide for continuation coverage of medical benefits for, inter alia, laid off employees.29 U.S.C. § 1161 (a). The purpose of COBRA is to afford employees who lose their job in a partial layoff continuation medical coverage at approximately the group rate, which is of course lower than the rate for individual coverage. Local 217, Hotel Restaurant Employees Union v.MHM, Inc., 976 F.2d 805, 809 (2d Cir. 1992). "Upon the happening of a qualifying event, such as layoffs, an employer must notify the plan administrator of the occurrence of that event. The administrator must then notify the qualified beneficiaries of their rights under COBRA within fourteen days of the date on which the administrator is notified.29 U.S.C. § 1166." Id.
The jurisdiction[11] of Connecticut courts to hear a case involving COBRA and/or ERISA is subject to 29 U.S.C. § 1132
(e) "Title 29 U.S.C. § 1132 (e) provides that" [e]xcept for actions under section (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the secretary or by a participant, beneficiary, fiduciary . . . State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section. Those suits as to which ERISA recognizes concurrent jurisdiction of actions under subsection (a)(1)(B) are civil actions "brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" Duncan v. Junior Achievement, supra, 19 Conn.L.Rptr. 671. On the other hand, pursuant to29 U.S.C. § 1132 (e), suits seeking to enforce the penalty provisions of COBRA found at 29 U.S.C. § 1132 (c) are within exclusive jurisdiction of the federal district court.
In this case, the plaintiff alleges that she suffered monetary damages as a result of paying her medical expenses and she seeks enforcement of the penalty, fine and damages provisions of COBRA. Therefore, this court does not have concurrent jurisdiction over this cause of action because CT Page 8379 the plaintiff has alleged a cause of action that is not wholly within the provisions of 29 U.S.C. § 1132 (e) and 1132(a)(1)(B) Therefore, the court grants the motion to strike count eleven.
The motion to strike counts one through six, nine and ten is granted on the basis that the plaintiff fails to state claims therein upon which relief can be granted. The motion to strike count eleven is granted on the basis that the court does not have jurisdiction over the cause of action stated therein.
 ___________________ MORAN, JUDGE